CAPITAL ENGINEERING & MANUFACTURING CO., INC., et al., Plaintiffs,

v.

Caspar W. WEINBERGER, et al., Defendants.

Civ. A. No. 87–1623 JHP.

United States District Court, District of Columbia.

Sept. 8, 1988.

James M. McHale, Joseph P. Covington, Trisa J. Thompson, Seyfarth, Shaw, Fairweather & Geraldson, Washington, D.C., for plaintiffs.

Wilma Lewis, Asst. U.S. Atty., Washington, D.C., for defendants.

MEMORANDUM OPINION

JOHN H. PRATT, District Judge.

On or about September 11, 1986, Capital Engineering & Manufacturing Co., Inc. and five of its chief officers [hereinafter "plaintiffs" or "Capital"] were suspended from pursuing contracts with the United States Army. Plaintiffs bring this action against the Secretary of Defense, the Secretary of the Army, and other high-ranking Army officers [hereinafter "defendants" or "the

Army"] challenging the suspension, which was lifted seven months after its imposition, as well as the award to plaintiffs' competitors of two government contracts during the term of the suspension. Defendants have filed a motion to dismiss this action on jurisdictional and related threshold grounds. In addition, defendants have filed a motion seeking a protective order precluding plaintiffs from conducting discovery reaching beyond the administrative record. The parties have also filed cross-motions for partial or total summary judgment, consideration of which has been postponed pending resolution of the preliminary issues raised in defendants' motions to dismiss and for a protective order. Both of these latter motions have been briefed in full. After briefly reviewing the background of this action, we set forth our reasons for denying defendants' motion to dismiss and granting defendants' motion for a protective order.

## Background

Capital is an Illinois-based corporation and long-time government contractor which manufactures and produces a variety of metal products. On September 24, 1981, the United States Army Tank Automotive Command awarded Capital a contract under which Capital was to produce 106 armored vehicle launch bridge kits at a total price of more than $9 million. Soon thereafter an additional 61 kits and about $5 million were added to the contract provisions. When completed, such kits are fitted to combat tank chases to enable river crossings. On September 11, 1986, after a wide-ranging investigation conducted by Army investigative units, Brigadier General Donald Hansen, the Army's suspending authority, determined that there existed evidence leading him to reasonably believe that Capital knowingly and intentionally produced defective launch bridge kits for the Army. Hence, Capital was informed by letter that it and its chief officers were being suspended from pursuing further Army contracts.

Capital promptly moved to have the suspension action rescinded. On April 23, 1987, after reviewing various submitted materials, General Hansen terminated Capital's suspension, but, in a follow-up letter dated May 4, 1987, declined to declare the suspension *void ab initio*. During Capital's suspension, Army contracts were awarded to Intergy Co. and Universal Hydraulics, Inc., two of Capital's competitors. Capital's bids for these contracts were not entertained in light of its suspension.

Capital and its chief officers filed this action in June 1987. On July 17, 1987, plaintiffs moved for partial summary judgment as to the suspension issue. Defendants duly responded by filing a cross-motion to dismiss or, in the alternative, for summary judgment. Because defendants' cross-motion raised colorable threshold challenges to the jurisdictional posture of this action, we ordered the parties to complete briefing on these pivotal questions before addressing other matters raised in the parties' pleadings. Memorandum Order of February 5, 1988.

## Discussion
### Defendants' Motion to Dismiss

Consistent with our order of February 5, 1988, the parties have extensively briefed the threshold issues raised in defendants' cross-motion. In the course of the parties' briefing, the posture of this action and the parties' respective positions have been clarified considerably. Defendants' initial objections to this action were two-fold. First, defendants contended that plaintiffs' action, though framed as one seeking declaratory relief, amounted to a suit for over $10,000 in money damages against the government. Hence, defendants maintained that jurisdiction over this suit lies exclusively in the United States Claims Court. 28 U.S.C. § 1491(a)(1). Second, defendants asserted that plaintiffs had failed to join two indispensable parties to this action, those being the successful bidders for the two contracts sought by but denied Capital during its suspension. In opposing this motion, plaintiffs adamantly maintained that they were not suing in contract, either on an express or implied theory, and did not seek monetary, contract, or injunctive relief of any sort. As if to make this

point plain, plaintiffs moved to amend their complaint to delete references therein to an amount in controversy and to the Federal Courts Improvements Act of 1982, 28 U.S. C. § 1491(a)(2), the latter of which pertains to the jurisdiction of the Claims Court.[1] With this amendment plaintiffs emphasized their intention to seek only declaratory relief. Presented with this clarified construction of plaintiffs' suit, defendants have reframed their objection. They now assert that plaintiffs seek declarations as to matters which do not present a live case and controversy, and which, therefore, are not suitable for adjudication.

Armed with this understanding of the present posture of the parties' dispute, we turn to consider the two declarations sought by plaintiffs. Plaintiffs first take issue with the manner in which Capital was suspended from receiving Army contracts. Specifically, Capital charges that defendants imposed the suspension without having provided Capital adequate notice of the underlying charges, without affording Capital access to certain allegedly exculpatory evidence, and without providing "fundamental fairness" as required by government regulations governing suspension procedures. Plaintiffs' Opposition to Defendants' Motion to Dismiss or For Summary Judgment ("Pltf. Opp.") at 6. Capital contends that as a result of these procedural deficiencies the suspension was imposed in violation of its right to due process under the law. Accordingly, Capital seeks a declaration that its suspension is *void ab initio*. In their motion to dismiss, defendants contend that all matters pertaining to plaintiffs' suspension are moot, since the suspension has now been lifted.

Defendants' position, while superficially appealing, is untenable. It is certainly true that defendants, by lifting the suspension, permit Capital to bid for Army contracts. Indeed, since the suspension was lifted Capital appears to have received at least one such contract. Nevertheless, it is undisputed that in lifting the suspension defendants did not purport to wipe Capital's slate clean of the potentially adverse implications of a government suspension. The Army's April 23, 1987 letter lifting the suspension was quite specific on this point: "General Hansen wants it understood that *this decision does not amount to a finding that Capital is presently responsible.* The evidence presented has not resolved the issue of present responsibility." Complaint Ex. E (emphasis supplied). Instead, the letter makes clear, General Hansen lifted the suspension upon a "balancing" of risks and interests, and upon recognition that Capital's submissions had raised genuine issues of material fact; that the risk to soldiers due to alleged defects in Capital's products was not as grave as originally thought; and that proceeding with a fact-finding hearing against Capital would interfere with an ongoing criminal investigation pertaining to related matters. *Id.*

A follow-up letter, dated May 4, 1987, reiterates General Hansen's initially proffered reasons for lifting the suspension. It adds that in taking this action General Hansen "certainly did not make any findings as to 'serious procedural improprieties'" or as to "whether certain reports were exculpatory." Defendants' Motion to Dismiss or For Summary Judgment, Appendix B. The correspondence concludes that "General Hansen's recent action to terminate the suspension does not affect the fact that a factual basis for suspension existed in September, 1986," and that "[t]hat evidence and factual basis remains today." *Id.* at 2.

The upshot of these correspondences is that Capital's suspension, while lifted, has not been declared *void ab initio*, and hence remains a part of Capital's contracting history. The letters also confirm that Major Karl Warner, the author of the Army correspondences, continues to believe that the suspension was well-founded when imposed. Courts and government regulations alike acknowledge that a suspension of a government contractor is a "serious action," Defense Acquisition Regulation

---

1. Plaintiffs' motion to amend was unopposed, and is now treated as conceded and hence granted.

§ 1–606, and that even "a temporary suspension" in certain circumstances "inflicts serious damage." *Electro–Methods, Inc. v. United States*, 3 Cl. Ct. 500, 509 (1983), *rev'd in part on other grounds*, 728 F.2d 1471 (Fed.Cir.1984). This is hardly surprising. Government procurement constitutes the lifeline of certain government contractors, and a contractor's ability to acquire such contracts depends heavily, if not primarily, on its reputation for integrity and responsibility. It is surely for this reason that certain governmental agency regulations require that contractors submitting bid proposals indicate whether they have "been debarred or suspended from the award of public contracts." GSA Federal Acquisition Regulation Supplement § 552.209–71(a)(2).[2]

■ ·For the foregoing reasons, Capital seeks a declaratory judgment that the Army issued its suspension in violation of government regulations and principles of due process. This equitable remedy will allegedly serve to "cleanse" Capital's record of the allegedly improper suspension. Defendants have taken no action, and have made no representation, which renders this request moot. Indeed, if Major Warner's second letter is any guide, the parties appear to harbor a live and vigorous dispute as to whether the suspension was properly imposed. Moreover, this court is certainly in a position to rule on plaintiffs' due process claims and, if they prove meritorious, to grant the relief requested. To rule otherwise would be to permit the Army to evade judicial review of allegedly unfounded suspensions, yet leave the blemish of such suspensions on the targets' records, by the expediency of terminating the subject suspensions before adjudication. As to this issue, then, the court is presented with "a real and substantial controversy admitting of specific relief through a decree of a conclusive character." *Preiser v. Newkirk*, 422 U.S. 395, 401, 95 S.Ct. 2330, 2334, 45 L.Ed.2d 272 (1975).[3]

■ Plaintiffs next seek from this court a declaration "that the defendants' failure to award Capital the contracts awarded to Universal Hydraulics and Intergy Co., respectively, was unlawful because Capital was the offeror submitting the lowest-priced proposal that was most advantageous to the Army under the evaluation criteria set forth in the [contract awarded to Universal Hydraulics] and submitted the lowest bid under [the contract awarded to Intergy Co.]." Complaint, Prayer for Relief (b). Plaintiffs seek only a declaration to this effect, and expressly disclaim any desire to have the contract awards set aside. As to this request defendants again claim that there is no live case or controversy.

In fact, this scenario can profitably be compared with others in which this court has found itself presented with live disputes, and has awarded or considered

---

**2.** Defendants note that Capital, in responding to such a request, could merely indicate that the suspension it previously received has since been lifted. Defendants' Response to Plaintiffs' Surreply at 6. Defendants do not indicate, however, why the onus for offering such an explanation should fall on the contractor, particularly one which believes its suspension to have been improperly mandated.

**3.** The cases cited by defendants in support of a contrary conclusion are distinguishable from the present context. For example, in *Perez v. Secretary of Health, Education and Welfare*, 354 F.Supp. 1342 (D.P.R.1972), plaintiff sought a judgment declaring improper the suspension of his disability benefits, even though he was subsequently afforded a hearing at which the benefits issue was resolved in his favor. The district court rejected plaintiff's plea for a declaratory judgment since the defendant agency could do no more for plaintiff than what it did, i.e., holding a hearing as requested. *Id.* at 1346. In *Perez*, then, a declaratory judgment "could not have any practical effect upon the parties." *Id.* In the present case, on the other hand, the court can grant the precise relief plaintiffs seek, and such relief would have practical significance notwithstanding defendants' revocation of Capital's suspension. Moreover, defendants in this case are in a position to "do more" for plaintiffs. Of most obvious relevance, they could declare the suspension not only terminated, but void. It is conceivable that such action might even moot the present controversy. Of course, at this juncture this court expresses no opinion as to whether defendants *should* take such action; we note only that it is within the power of this court and defendants to provide the relief plaintiffs seek.

awarding equitable relief, while at the same time refusing to redirect procurements. For instance, in *Aero Corp. v. Department of Navy*, 549 F.Supp. 39 (1982), this court found a substantial likelihood that the Department of Navy violated procurement law when it awarded a particular contract on a non-competitive basis and failed to notify plaintiff Aero Corporation and other interested parties of this procurement decision in a timely fashion. *Id.* at 44–45. At the same time, the court concluded that various "public interest considerations" militated against redirecting the contract to Aero Corporation long after the contract was originally awarded. *Id.* Despite its unwillingness to upset the procurement action the court retained jurisdiction over the suit, reasoning that "plaintiff may be entitled to a declaratory judgment that the decisions of defendant precluding [Aero Corporation] from competition for these [ ] contracts were unlawful." *Id.* at 45. As the court explained, "the fact that the Court cannot now alter the course of an apparently unlawful procurement does not relieve it of the obligation to determine whether plaintiff is entitled to some other form of interlocutory affirmative relief." *Id.* To rule otherwise, concluded the court, might permit unlawful procurement decisions to evade judicial review. *Id.* *See also Bollinger Machine Shop & Shipyard, Inc. v. United States*, 594 F.Supp. 903, 910, 915 (D.D.C.1984) (disappointed bidder in bid protest action entitled to declaratory judgment that Coast Guard's award of contract was unlawful, even though court declines to order Coast Guard to accept plaintiff's bid).

■ Defendants additionally assert that the two successful bidders for these contracts are indispensable parties to this lawsuit, and that plaintiffs' failure to join them is fatal to this action. Fed. R.Civ.P. 19. It initially bears mentioning that in neither of the cases cited above was the successful bidder joined as a party defendant, despite the fact that in both cases their rights to the subject contracts were directly at stake. Moreover, we fail to see how the presence in this action of Intergy and Universal Hydraulics is necessary, indispensable or even helpful. We reiterate that "Capital has not sought to have the contracts awarded to its competitors ... cancelled and resolicited; nor has Capital otherwise here sought that the awards be directed it." Pltf. Opp. at 6. Thus, the declaratory relief envisioned by plaintiffs does not implicate the successful bidders' rights to these Army contracts. Nor is input from Intergy and Universal Hydraulics required before this court can rule upon the manner in which Capital was denied these contracts. Accordingly, we conclude that the present action presents a live case and controversy which suffers from no deficiencies in pleading or joinder of parties.

*Defendants' Motion for Protective Order*

Having denied defendants' motion to dismiss, and thereby satisfying ourselves as to the propriety of this court's exercise of jurisdiction over this case, we proceed to the parties' discovery dispute. In its motion for a protective order defendants object to plaintiffs' avowed intention to depose some seven agency officials who allegedly possess personal knowledge pertinent to General Hansen's suspension decision. In their subpoenas and notices of deposition duces tecum plaintiffs also request that the deponents produce certain documentary materials. We have already rejected those objections to discovery which formed the basis of defendants' motion to dismiss. *See supra.* Because plaintiffs continue to seek these depositions, Pltf. Opp. at 17, we must now consider the additional arguments lodged by defendants in an effort to enjoin discovery.

Defendants' first objection to plaintiffs' discovery requests is that judicial review of administrative decisions is typically confined to the administrative record. *Florida Power & Light Co. v. Lorion*, 470 U.S. 729, 743–44, 105 S.Ct. 1598, 1607, 84 L.Ed.2d 643 (1985) (the reviewing court's task is to apply the appropriate standard of review "based on the record the agency presents to the reviewing court"). For reasons well articulated by our Court of Appeals in *San Luis Obispo Mothers for*

Peace v. NRC, 751 F.2d 1287, 1324–26 (D.C. Cir.1984), courts are loathe to depart from the record developed by an agency in reviewing that agency's decisions. It is clear, in short, that supplementation of the administrative record through post-administrative discovery is "the exception [and] not the rule." *Id.* at 1324.

One such exception warranting supplementation arises when a plaintiff "ma[kes] a *prima facie* showing that the agency excluded from the record evidence adverse to its position...." *Id.* at 1327. Relying in part on this exception, plaintiffs refer to a report dated March 4, 1986—months before Capital was suspended—which defendants inadvertently produced in the course of briefing the present motions. The report chronicles the results of an investigation into Capital's launch bridge kits apparently undertaken by Radian, Inc. for the Army. The report, which was not included in the administrative record, contains certain arguably exculpatory comments pertaining to Capital's work product, including Radian's ultimate recommendation that "it is not necessary to investigate the delivered AVL Bridge welds any further ... [since] a failure of any of the Boom Outrigger welds would not be a safety hazard...." Without ruling at this juncture on the probity or weight of this report,[4] we note that it was apparently commissioned by the Army; that the report's tenor appears strikingly more favorable to Capital than General Hansen's suspension determination; and that at the least Radian's recommendations and findings merited incorporation—or at least reference—in the administrative record. This is particularly true given that the suspension notice provided plaintiffs announced that the suspension was premised on certain "[g]overnment testing" which purportedly evidenced material defects in Capital's products. Complaint Ex. E.

In light of this information, plaintiffs have made out their *prima facie* case that supplementation of the present record is appropriate. This does not mean, of course, that plaintiffs are necessarily entitled to the seven depositions and potentially voluminous documentary materials they seek. *E.g., Sierra Club v. Costle,* 657 F.2d 298, 390 n. 2 (D.C.Cir.1981) (court allows supplementation of record by requiring government affidavits responsive to gaps in record, but rejects requests to propound interrogatories and conduct depositions of former agency officials). We need not rule on the precise scope and manner of supplementation, however, for defendants have raised a meritorious concern as to the *timing* of plaintiffs' discovery. Specifically, defendants maintain that any discovery in this action must be stayed so as not to interfere with a criminal investigation of Capital and the launch bridge contract which is presently pending in the Northern District of Illinois.

Having reviewed the parties' pleadings, we now conclude that defendants' objection to discovery is meritorious. Defendants have submitted an affidavit which demonstrates that a criminal investigation involving Capital and elements of the contract here at issue is currently under way. Phillip Turner Aff. ¶ 2. Courts are widely acknowledged to possess the authority to stay discovery in such circumstances in order to prevent litigants from availing themselves of liberal civil discovery rules in order to circumvent the more restrictive guidelines governing criminal discovery. *Gordon v. Federal Deposit Insurance Corp.,* 427 F.2d 578, 580 (D.C.Cir.1970); *Founding Church of Scientology v. Kelley,* 77 F.R.D. 378, 380 (D.D.C.1977); *Larouche Campaign v. FBI,* 106 F.R.D. 500, 501 (D.Mass.1985). Presented with such a scenario, the court must determine the extent to which the civil discovery threatens the secrecy and integrity of criminal proceedings, and, if the discovery could prove meddlesome, whether to stay discovery entirely or to narrow the range of discovery so as not to impinge upon the criminal proceedings. *Founding Church of Scientology, supra,* at 381; *Campbell v. East-*

---

**4.** It bears mentioning that the report appears to focus on the degree of deficiencies in Capital's launch bridge kits and the danger posed thereby, and not on the potentially decisive question of whether Capital knowingly and intentionally produced defective products for the Army.

*land,* 307 F.2d 478, 487 (5th Cir.1962), *cert. denied,* 371 U.S. 955, 83 S.Ct. 502, 9 L.Ed. 2d 502 (1963).

The chronology of the filing of this action, the lodging of the present discovery requests, and the initiation of criminal proceedings raises the distinct danger that discovery obtained in the present action may be utilized to defend against the criminal action. *Cf. Larouche Campaign,* 106 F.R. D. at 502 (noting timing of filings and similarity of actions as relevant factors in evaluating stay request); *United States v. Percuoco,* 109 F.R.D. 565, 567 (D.Mass. 1986) (engaging in similar analysis). It is apparent from the parties' papers that issues central to the present civil action are also pivotal to the criminal investigation now under way in Illinois federal court. In its pleadings plaintiffs have made clear that the discovery they seek "goes directly to the issue whether Capital's [launch bridge] kits are 'materially defective.'" Plaintiff's Opposition to Motion for Protective Order at 11. In addition, plaintiffs' pleadings in an action filed in the United States Claims Court featuring the same contract averred that "[t]he criminal investigation centers on allegations by two ex-employees of Capital that Capital intentionally performed defective work on a U.S. Army contract for bridge launchers." *Capital Engineering & Mfg. Co. v. United States,* No. 263–87C, Plaintiffs' Opposition to Defendant's Motion to Stay at 2–3, dated August 7, 1987. It would appear beyond peradventure, then, that the criminal investigation and civil discovery now sought are inextricably intertwined. It was surely in part for this reason that plaintiffs' parallel action in Claims Court was stayed "pending the outcome of [the] grand jury criminal investigation of plaintiff and the contract...." *Id.,* Order at 1 (Cl. Ct. Aug. 25, 1987).

Given the foregoing, the court concludes that the government's interest in protecting the secrecy and integrity of its criminal proceeding outweighs plaintiffs' need for the information which might be obtained through the discovery now sought. Because we can envision no principled way of narrowing the range of discovery so as not to compromise the criminal proceedings, we conclude that defendants' motion for a protective order must be granted as to all discovery sought by plaintiffs.[5]

### Conclusion

For the foregoing reasons, this case presents an actionable case or controversy over which this court has jurisdiction and which, as pleaded, is appropriate for judicial review. Moreover, plaintiffs are entitled to supplement the administrative record in order to provide for effective review of the agency's decision. Nevertheless, discovery in this action must be stayed until the grand jury convening in Illinois declines to return an indictment, or, if an indictment is returned, until the ensuing criminal trial is completed.

An order consistent with the foregoing has been entered this day.

### ORDER

Upon consideration of plaintiffs' motion to amend the complaint, defendants' motion to dismiss, defendants' motion for protective order, defendants' motion to conduct an *in camera* review of certain documents, plaintiffs' oppositions to defendants' motions, and the entire record herein, and for the reasons expressed in a memorandum opinion entered this day, it is by the court this 8th day of September, 1988

ORDERED that plaintiffs' motion to amend the complaint is hereby granted, and it is

---

**5.** In addition to the motions previously addressed, defendants have moved to have the court conduct an *in camera* review of certain documents which allegedly justify the imposition of plaintiffs' suspension, but which were not provided to plaintiffs or included in the administrative record because of a perceived threat to the secrecy of the pending criminal investigation. Such review is not necessary to our resolution of the motions considered herein. Thus, we decline defendants' invitation without prejudice to defendants' right to renew this request at an appropriate occasion.

ORDERED that defendants' motion to dismiss is hereby denied, and it is

ORDERED that defendants' motion to conduct an *in camera* review of certain documents is hereby denied without prejudice, and it is

ORDERED that defendants' motion for protective order is hereby granted, and it is

ORDERED that all discovery in this action is hereby suspended pending termination of criminal proceedings currently pending in the Northern District of Illinois.