Filed:  June 20, 2000

UNITED STATES COURT OF APPEALS

FOR THE FOURTH CIRCUIT

No. 99-2432
(CA-98-1837-A)

CESC Plaza Limited Partnership, et al.,

Plaintiffs - Appellants,

versus

United States Department of Commerce, et al.,

Defendants - Appellees.

O R D E R

The court amends its opinion filed June 8, 2000, as follows:

On page 2, section 2, line 2 -- counsel's name is corrected to read "Jeri Kaylene Somers."

For the Court - By Direction

/s/ Patricia S. Connor
Clerk

**UNPUBLISHED**

**UNITED STATES COURT OF APPEALS**

**FOR THE FOURTH CIRCUIT**

CESC PLAZA LIMITED PARTNERSHIP;
FIRST CRYSTAL PARK ASSOCIATES
LIMITED PARTNERSHIP; SECOND
CRYSTAL PARK ASSOCIATES LIMITED
PARTNERSHIP; THIRD CRYSTAL PARK
ASSOCIATES LIMITED PARTNERSHIP;
CHARLES E. SMITH REAL ESTATE
SERVICES L.P.,
<u>Plaintiffs-Appellants,</u>

v.

No. 99-2432

UNITED STATES DEPARTMENT OF
COMMERCE, PATENT AND TRADEMARK
OFFICE; BRUCE A. LEHMAN,
Commissioner of Patent and
Trademark; GENERAL SERVICES
ADMINISTRATION; DAVID J. BARRAM,
Administrator, General Services
Administration; UNITED STATES OF
AMERICA,
<u>Defendants-Appellees.</u>

Appeal from the United States District Court
for the Eastern District of Virginia, at Alexandria.
James C. Cacheris, Senior District Judge.
(CA-98-1837-A)

Argued: May 3, 2000

Decided: June 8, 2000

Before NIEMEYER, TRAXLER, and KING, Circuit Judges.

_____

Affirmed by unpublished per curiam opinion.

_____

**COUNSEL**

**ARGUED:** John L. Oberdorfer, PATTON BOGGS, L.L.P., Washington, D.C., for Appellants. Jeri Kaylene Somers, Assistant United States Attorney, Alexandria, Virginia, for Appellees. **ON BRIEF:** Mary Beth Bosco, Benjamin G. Chew, PATTON BOGGS, L.L.P., Washington, D.C., for Appellants. Helen F. Fahey, United States Attorney, Alexandria, Virginia, for Appellees.

_____

Unpublished opinions are not binding precedent in this circuit. See Local Rule 36(c).

_____

**OPINION**

PER CURIAM:

Plaintiffs (the "Smith Companies") brought this action against the United States and various of its agencies and officials (the Government) in the Eastern District of Virginia, seeking declaratory and injunctive relief based on allegations that the Government procurement process for leasing office space for use by the Patent and Trademark Office ("PTO") violated the Competition in Contracting Act, 41 U.S.C. § 253a, and the Public Buildings Act, 40 U.S.C. § 606. The district court concluded that no such violations had occurred, and it granted summary judgment to the Government. The Smith Companies appeal the summary judgment award. Finding no error, we affirm.

I.

In June 1996, the General Services Administration ("GSA") issued a Solicitation for Offers ("SFO") seeking twenty-year lease proposals to house the PTO. The PTO, one of the largest government agencies

2

in Northern Virginia, is now housed in eighteen separate buildings located in Arlington and has more than five thousand full-time employees. The Smith Companies are the PTO's current lessor and constitute one of the three remaining bidders in the final stage of this government procurement process.[1] The Smith Companies proposed to house the PTO by renovating existing buildings, unlike the two other bidders who propose to house the PTO through construction of new office buildings.

The SFO established generally the Government's needs for approximately two million square feet of occupiable office space for use by the PTO. As explained in the SFO's Executive Summary, "for a project of this scope, several years will elapse between the release of the SFO and the completion of all necessary construction, [thus] specifying the PTO's detailed space requirements" at that time was impractical. The Executive Summary consequently noted that the "PTO will provide a more detailed program of requirements at Lease award, and will continue to supplement such program" as necessary.

The SFO required the lessor to provide buildings resembling a "cold, dark shell" (buildings with an unfinished interior and without distributed heat and power systems). The shell was to be constructed with at least twenty percent of the occupiable floor bays on each floor having a specially upgraded loading capacity, with each floor having space designated for empty "service shafts" and a communications room. The SFO further instructed the lessor to build into its bid an $88 million fit-out allowance, to permit the Government to construct all necessary improvements of the unfinished space.

During the two years following the SFO's issuance, the bidders submitted general proposals and engaged in extended negotiations with the Government. In addition, the Government provided a draft Environmental Impact Statement to the bidders for use in their efforts. However, the Government did not give the bidders its Program of Requirements ("POR"), the more specific and detailed designation of

_____

[1] On June 14, 1999, while this proceeding was pending in the district court, the GSA issued a Record of Final Decision indicating its intention of awarding its offer to a different bidder. The award has not yet been made.

the space requirements referred to in the SFO. In November 1998, the three remaining bidders, including the Smith Companies, submitted Best and Final Offers for the Government's consideration.

In December 1998, apparently with some inkling that its bid would be unsuccessful, the Smith Companies sued the Government in the Eastern District of Virginia, alleging that the SFO's requirements overstate the Government's minimal needs. According to the allegations in its lawsuit, the Smith Companies are disadvantaged in the competition because their proposal to renovate existing buildings is uniquely affected by these excess requirements.

## II.

The Administrative Procedure Act ("APA"), 5 U.S.C. § 704, governs our review of this government procurement process. Pursuant thereto, we, like the district court, must "review the administrative record de novo and render our own independent judgment, according no deference to the district court's decision." City of New York v. Shalala, 34 F.3d 1161, 1166 (2d Cir. 1994); see also Brown v. Dep't of Interior, 679 F.2d 747, 748 (8th Cir. 1982). Under the APA, we must uphold the agency action unless it was "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 5 U.S.C. § 706(2)(A). In making this determination, the court

> must consider whether the agency decision was based on a consideration of the relevant factors and whether there has been a clear error of judgment. Although this inquiry into the facts is to be searching and careful, the ultimate standard of review is a narrow one. The court is not empowered to substitute its judgment for that of the agency.

Citizens to Preserve Overton Park, Inc. v. Volpe , 401 U.S. 402, 416 (1971) (internal citations omitted), overruled on other grounds by Califano v. Sanders, 430 U.S. 99, 105, 107 (1977).

## A.

Ordinarily, the agency's decision is entitled to a presumption of regularity. See id. at 415 (citing Pacific States Box & Basket Co. v.

4

White, 296 U.S. 176, 185-86 (1935)). If any state of facts reasonably can be conceived that would sustain the agency's decision, the existence of that state of facts is presumed, unless the challenger establishes contrary facts affirmatively demonstrating that the decision is arbitrary. See Pacific States Box & Basket Co., 296 U.S. at 185-86. The Smith Companies contend that the presumption of regularity should not be applied here because of the following: (1) the administrative record in this procurement challenge is a fiction, constructed solely for litigation purposes; (2) even so, the administrative record compiled by the GSA was incomplete; and (3) because the offerors were not provided with essential information for their bids, the solicitation process was repeatedly revised, rendering it inherently irregular.

In support of its claim that the administrative record is a fiction, the Smith Companies rely on court decisions that permit expansion of an administrative record at the behest of parties other than the agency. See, e.g., Bar MK Ranches v. Yeutter, 994 F.2d 735, 739 (10th Cir. 1993); Capital Engineering v. Weinberger, 695 F. Supp. 36, 41 (D.D.C. 1988); Lloyd v. Illinois Reg'l Transp. Auth., 548 F. Supp. 575, 590 (N.D. Ill. 1982); Cubic Applications v. United States, 37 Fed. Cl. 345 (Fed. Cl. 1997). In this case, the district court in fact expanded the administrative record -- at the plaintiffs' request. However, the Smith Companies provide no authority (and we find none) supporting the proposition that the lack of a clearly delineated administrative record is in itself sufficient reason to deny the GSA the usual presumption of regularity accorded its procurement process.

Nor do the specific documents added to the administrative record by the district court justify our rejection of the presumption of regularity. In support of their assertion that the GSA improperly withheld the POR from the bidders, the Smith Companies point to two communications from GSA to the PTO requesting access to the POR, emphasizing the POR's importance in the award process. However, these communications simply fail to rise to the level of a "smoking gun," as the Smith Companies would have us conclude.[2] The Smith Compa-

_____

**2** Likewise, while discovery battles between the parties concerning whether e-mails existed or were retrievable from several years earlier may raise questions about the efficiency of the Government's search methodology, such discovery disputes fail to establish bad faith or other impropriety.

nies also contend that the GSA's having sought and secured a protective order as to certain discovery, including a senior officer's deposition scheduled soon after the lawsuit was filed, should cause us concern. Although we are not called upon to review the district court's decision to grant the protective order, we find it contrary to logic that the request for such an order permits an inference of impropriety, especially since the district court's entry of the order suggests that the GSA's request was not frivolous.

The Smith Companies also maintain that GSA's provision to the prospective bidders of a draft -- rather than a final -- Environmental Impact Statement, and its failure to submit the POR to the bidders until the district court ordered it to do so, raises an inference of impropriety. We again disagree. A procurement project of this magnitude, to provide the Government with approximately two million square feet of office space with substantial technological capabilities (and which has a time horizon of at least twenty years) requires enormous planning and revision. As the Smith Companies acknowledge, this procurement is "the largest real estate lease project ever undertaken by the United States," with a value of approximately $1.3 billion. Significantly, there is no contention that GSA differentiated between the prospective bidders in withholding the disputed documents. Indeed, the SFO indicated that the POR would not be available to the bidders until late in the decision-making process. We accordingly must conclude that our review of the GSA's conduct is circumscribed by the presumption of regularity ordinarily applicable to agency actions.

B.

The Smith Companies also assert that the SFO contains unnecessarily restrictive requirements that contravene the terms Congress approved for this lease procurement and violate the "full and open competition" mandate of 41 U.S.C. § 253a. GSA obtained the required Congressional approval in 1995, based on its prospectus representing that GSA would "provide for maximum competition by allowing for the possible construction or renovation of the required space." Likewise, to ensure "full and open competition," the solicitation was to "include restrictive specifications only to the extent necessary to satisfy the needs of the executive agency or as authorized by law." 41 U.S.C. § 253a(a)(2)(A), (B). The Smith Companies main-

6

tain that certain SFO requirements, discussed more specifically below, unfairly prejudice bids from those who propose to renovate existing buildings rather than to construct new ones.

First, the Smith Companies contend that the requirements of a "cold, dark shell" and an $88 million fit-out allowance artificially inflate their bid price, by requiring them to destroy their existing buildings' interiors and then rebuild them. They argue that they could save a substantial amount of money by simply renovating interiors directly to the needed layout. The Smith Companies maintain that their bid price should reflect those savings, and they are prejudiced by their bid's inability to do so. On the other hand, the Government asserts that these requirements are entirely necessary to permit its planners the flexibility to organize the PTO's operations in response to its interior design needs, such as implementing standardized distributed space plans on each floor throughout the buildings and assigning the most appropriate location to each of the PTO's specialized divisions.

Next, the Smith Companies maintain that the requirements for increased load capacity in at least twenty percent of each floor's space is also unnecessary, as such capacity in only six percent of the floor space will serve the PTO's needs. They argue that increased capacity beyond six percent, if needed, can be provided for through renovation over the course of the twenty-year lease. The Government asserts, however, that over the course of the twenty-year lease, the PTO must have the flexibility to relocate heavy files, equipment, and libraries as needs arise, without incurring additional construction cost and inconvenience.

Finally, the Smith Companies argue that it is unnecessary for each floor to possess empty service shafts and communications rooms. They claim that there is no present need for these requirements, and they are "useless" items that simply require "costly retrofitting" of existing space. The Government indicates that the service shaft requirement will enhance access to secondary distribution in the building in remote locations in each floor, thus eliminating the need for longer and more problematic cable and other piping runs. According to the Government, both operating and cost efficiencies are likely to result. The multiple communications rooms were responsive to the

7

PTO's specific request for ensuring efficient voice and data communications with needed redundancy for reliable functioning.

On careful review, we must agree that the Government has shown proper justification for these requirements, particularly in its need for flexibility in the extensive long-term space design and planning of this major project. We are not empowered, on this record, to substitute our judgment for that of the agency. See Overton Park, 401 U.S. at 416. We accordingly conclude that the Government's specifically identified needs, although contested by the Smith Companies, are not "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law."

III.

We have carefully considered the briefs and oral argument in this appeal and, for the foregoing reasons, find ourselves in agreement with the decision of the district court. See CESC Plaza Ltd. Partnership v. United States Dep't of Commerce, CA No. 98-1837 (E.D. Va. July 29, 1999). We therefore affirm its award of summary judgment in favor of the Government.

AFFIRMED

8