# DEGEN *v.* UNITED STATES

No. 95–173.   Argued April 22, 1996—Decided June 10, 1996

KENNEDY, J., delivered the opinion for a unanimous Court.

*Lawrence S. Robbins* argued the cause for petitioner. With him on the briefs were *Andrew L. Frey, Alan E. Untereiner,* and *Daniel W. Stewart.*

*Miguel A. Estrada* argued the cause for the United States. With him on the brief were *Solicitor General Days, Acting Assistant Attorney General Keeney,* and *Deputy Solicitor General Dreeben.**

JUSTICE KENNEDY delivered the opinion of the Court.

In this case we consider whether a United States District Court may strike the filings of a claimant in a forfeiture suit and grant summary judgment against him for failing to appear in a related criminal prosecution. The Court of Appeals for the Ninth Circuit held this to be a proper exercise of the District Court's inherent authority. We reverse.

A federal grand jury in Nevada indicted Brian Degen for distributing marijuana, laundering money, and related crimes. On the same day in 1989 that it unsealed the indictment, the United States District Court for the District of Nevada also unsealed a civil forfeiture complaint. The Government sought to forfeit properties in California, Nevada, and Hawaii, allegedly worth $5.5 million and purchased with proceeds of Degen's drug sales or used to facilitate the sales. 84 Stat. 1276, as amended, 21 U. S. C. §§ 881(a)(6)–(a)(7). An affidavit by an agent of the Drug Enforcement Agency accompanied the complaint and recounted instances of Degen's alleged drug smuggling during the previous 20 years.

*Briefs of *amici curiae* urging reversal were filed for Public Citizen by *Alan B. Morrison* and *Allison M. Zieve;* and for Ghaith R. Pharaon by *Richard F. Lawler.*

Degen is a citizen of the United States and of Switzerland, his father having been born there. Degen moved to Switzerland with his family in 1988. He has not returned to face the criminal charges against him, and we are advised that Switzerland's extradition treaty with the United States does not oblige either country to turn its nationals over to the other. While remaining outside this country, however, Degen did file an answer in the civil action to contest the forfeiture. Among other things, he contended the Government's claims were barred by the statute of limitations, 46 Stat. 758, as amended, 19 U. S. C. § 1621, and based on an unlawful retroactive application of the forfeiture laws.

The District Court in the forfeiture case did not consider any of these arguments. Instead it granted the Government's motion to strike Degen's claims and entered summary judgment against him. The court held Degen was not entitled to be heard in the civil forfeiture action because he remained outside the country, unamenable to criminal prosecution. *United States* v. *Real Property Located at Incline Village,* 755 F. Supp. 308 (1990). After another two years consumed by procedural matters (for the most part involving attempts by Degen's wife to contest the forfeiture), the District Court entered a final order vesting title to the properties in the United States. The Court of Appeals for the Ninth Circuit affirmed. *United States* v. *Real Property Located at Incline Village,* 47 F. 3d 1511 (1995). We granted certiorari. 516 U. S. 1070 (1996).

In an ordinary case a citizen has a right to a hearing to contest the forfeiture of his property, a right secured by the Due Process Clause, *United States* v. *James Daniel Good Real Property,* 510 U. S. 43, 48–62 (1993); *Fuentes* v. *Shevin,* 407 U. S. 67, 80 (1972); *McVeigh* v. *United States,* 11 Wall. 259, 266–267 (1871), and implemented by federal rule, Rule C(6) of the Supplemental Rules for Certain Admiralty and Maritime Claims. Nonetheless, the Government argues, the

District Court's inherent powers authorized it to strike Degen's claims under what some courts have labeled the "fugitive disentitlement doctrine." We have sustained, to be sure, the authority of an appellate court to dismiss an appeal or writ in a criminal matter when the party seeking relief becomes a fugitive. *Ortega-Rodriguez* v. *United States*, 507 U. S. 234, 239 (1993); *Smith* v. *United States*, 94 U. S. 97 (1876). The question before us is whether the doctrine should be extended to allow a court in a civil forfeiture suit to enter judgment against a claimant because he is a fugitive from, or otherwise is resisting, a related criminal prosecution. The Courts of Appeals to consider the question have come to different conclusions (compare the decision here and in *United States* v. *Eng*, 951 F. 2d 461 (CA2 1991), with *United States* v. *$40,877.59 in United States Currency*, 32 F. 3d 1151 (CA7 1994), and *United States* v. *$83,320 in United States Currency*, 682 F. 2d 573 (CA6 1982)), precipitating our grant of certiorari in this case.

Courts invested with the judicial power of the United States have certain inherent authority to protect their proceedings and judgments in the course of discharging their traditional responsibilities. *Chambers* v. *NASCO, Inc.*, 501 U. S. 32, 43–46 (1991); *Link* v. *Wabash R. Co.*, 370 U. S. 626, 630–631 (1962); *United States* v. *Hudson*, 7 Cranch 32, 34 (1812). The extent of these powers must be delimited with care, for there is a danger of overreaching when one branch of the Government, without benefit of cooperation or correction from the others, undertakes to define its own authority. *Roadway Express, Inc.* v. *Piper*, 447 U. S. 752, 764 (1980). In many instances the inherent powers of the courts may be controlled or overridden by statute or rule. *Carlisle* v. *United States, ante*, at 426; *Bank of Nova Scotia* v. *United States*, 487 U. S. 250, 254 (1988). Principles of deference counsel restraint in resorting to inherent power, *Chambers* v. *NASCO, supra*, at 44, and require its use to be a reasonable

response to the problems and needs that provoke it, *Ortega-Rodriguez* v. *United States, supra,* at 244; *Thomas* v. *Arn,* 474 U. S. 140, 146–148 (1985).

In accord with these principles, we have held federal courts do have authority to dismiss an appeal or writ of certiorari if the party seeking relief is a fugitive while the matter is pending. Several reasons have been given for the rule. First, so long as the party cannot be found, the judgment on review may be impossible to enforce. This was the rationale of the first case to acknowledge the doctrine, *Smith* v. *United States, supra,* at 97: "It is clearly within our discretion to refuse to hear a criminal case in error, unless the convicted party, suing out the writ, is where he can be made to respond to any judgment we may render." See also *Bohanan* v. *Nebraska,* 125 U. S. 692 (1887); *Eisler* v. *United States,* 338 U. S. 189 (1949). Second, we have said an appellant's escape "disentitles" him "to call upon the resources of the Court for determination of his claims." *Molinaro* v. *New Jersey,* 396 U. S. 365, 366 (1970) *(per curiam).* The cases cited so far involved the dismissal of fugitives' petitions in this Court. In reviewing similar practices in state courts for conformity with the Due Process Clause, we have noted further reasons for them: Disentitlement "discourages the felony of escape and encourages voluntary surrenders," and "promotes the efficient, dignified operation" of the courts. *Estelle* v. *Dorrough,* 420 U. S. 534, 537 (1975) *(per curiam)* (using those reasons to justify refusing to reinstate an appeal even once an escaped appellant is recaptured). See also *Allen* v. *Georgia,* 166 U. S. 138 (1897).

Against this backdrop came our decision four Terms ago in *Ortega-Rodriguez.* The defendant had escaped from federal custody after conviction but before sentencing. He was sentenced *in absentia,* but later was recaptured and resentenced; he then filed an appeal, which was dismissed on the authority of *Smith* v. *United States, supra,* and the other disentitlement cases just described. We reversed, holding

those precedents did not justify dismissal of an appeal by a fugitive recaptured before the appeal was filed. We noted the judgment of the Court of Appeals would be enforceable against the appellant, and that his earlier absence, when no appeal was pending, did not threaten the dignity of the court imposing the sanction. *Ortega-Rodriguez* v. *United States,* 507 U. S., at 244–246. We did not rule out the possibility of appellate disentitlement where necessary to prevent actual prejudice to the Government from a fugitive's extended absence, *id.,* at 249, but we concluded the sanction of disentitlement was unjustified as a sanction applicable to all cases where an escape once had occurred, *id.,* at 249–251. We conduct a similar examination of the disentitlement imposed here, and find it likewise unjustified.

There is no risk in this case of delay or frustration in determining the merits of the Government's forfeiture claims or in enforcing the resulting judgment. The Government has shown probable cause to forfeit the property, and Degen must refute the showing or suffer its loss. Since the court's jurisdiction over the property is secure despite Degen's absence, there is no danger the court in the forfeiture suit will waste its time rendering a judgment unenforceable in practice.

The Government is on stronger ground in suggesting the criminal prosecution against Degen might be compromised by his participation in the forfeiture case. The problem stems from the differences between the discovery privileges available to Degen in each case. See *Afro-Lecon, Inc.* v. *United States,* 820 F. 2d 1198, 1203–1204 (CA Fed. 1987); *Campbell* v. *Eastland,* 307 F. 2d 478, 487 (CA5 1962). A criminal defendant is entitled to rather limited discovery, with no general right to obtain the statements of the Government's witnesses before they have testified. Fed. Rules Crim. Proc. 16(a)(2), 26.2. In a civil case, by contrast, a party is entitled as a general matter to discovery of any information sought if it appears "reasonably calculated to lead

to the discovery of admissible evidence." Fed. Rule Civ. Proc. 26(b)(1). The Government contends Degen might use the rules of civil discovery in the forfeiture suit to gain an improper advantage in the criminal matter, prying into the prosecution's case in a manner not otherwise permitted.

These problems are not uncommon when criminal and civil forfeiture suits are pending at the same time, but they are made acute by Degen's absence. If he were in federal custody, the risk of compromising the criminal case could be avoided by staying the civil suit until the prosecution is over. 21 U. S. C. § 881(i). Cf. *United States* v. *Kordel*, 397 U. S. 1, 9 (1970). Degen rendered this solution impractical by frustrating the prosecution of the criminal case against him. The criminal trial cannot begin until he returns, *Crosby* v. *United States*, 506 U. S. 255 (1993); if the civil matter were subordinated to the criminal, the forfeiture could be held in abeyance for an indefinite time. This delay would be prejudicial to the Government, for if its forfeiture claims are good, its right to the properties is immediate. We nonetheless are satisfied the District Court has the means to resolve these dilemmas without resorting to a rule forbidding all participation by the absent claimant.

First, the District Court has its usual authority to manage discovery in a civil suit, including the power to enter protective orders limiting discovery as the interests of justice require. Fed. Rule Civ. Proc. 26(c). Decisions in the Courts of Appeals have sustained protective orders to prevent parties from using civil discovery to evade restrictions on discovery in criminal cases. See, *e. g., In re Ramu Corp.*, 903 F. 2d 312, 316–317, 320–321 (CA5 1990); *United States* v. *Stewart*, 872 F. 2d 957, 962–963 (CA10 1989); *Campbell* v. *Eastland, supra,* at 487. See also *Capital Engineering & Mfg. Co., Inc.* v. *Weinberger*, 695 F. Supp. 36, 41–42 (DC 1988); *Founding Church of Scientology* v. *Kelley*, 77 F. R. D. 378, 380–381 (DC 1977).

Second, the court can exercise its discretion to manage the civil litigation to avoid interference with the criminal case. If, for instance, the Government were unable to rebut Degen's arguments except by revealing confidential details of the criminal investigation, the court could consider controlling or limiting the form of proof, or in an extreme case even the theories it permits the absent party to pursue, to prevent him from exploiting the asymmetries he creates by participating in one suit but not the other.

Third, of course, Degen's absence entitles him to no advantage. If his unwillingness to appear in person results in noncompliance with a legitimate order of the court respecting pleading, discovery, the presentation of evidence, or other matters, he will be exposed to the same sanctions as any other uncooperative party. A federal court has at its disposal an array of means to enforce its orders, including dismissal in an appropriate case. Again, its powers include those furnished by federal rule, see, *e. g.,* Fed. Rules Civ. Proc. 37, 41(b); *National Hockey League* v. *Metropolitan Hockey Club, Inc.,* 427 U. S. 639 (1976) *(per curiam); Societe Internationale pour Participations Industrielles et Commerciales, S. A.* v. *Rogers,* 357 U. S. 197, 212 (1958); cf. *United States* v. *Pole No. 3172,* 852 F. 2d 636, 641–642 (CA1 1988), and by inherent authority, see, *e. g., Chambers* v. *NASCO, Inc.,* 501 U. S., at 44–45; *Link* v. *Wabash R. Co.,* 370 U. S., at 630–633; *Woodson* v. *Surgitek, Inc.,* 57 F. 3d 1406, 1416–1417 (CA5 1995); *Zebrowski* v. *Hanna,* 973 F. 2d 1001, 1006 (CA1 1992) (Breyer, C. J.).

The details of these steps are committed to the discretion of the District Court; it would be premature to consider now the precise measures the court should adopt as the case proceeds. The existence of these alternative means of protecting the Government's interests, however, shows the lack of necessity for the harsh sanction of absolute disentitlement. Consideration of some of Degen's defenses, such as the statute of limitations, appears to require little discovery. If

they have merit, the Government should not prevail; if they are groundless, the Government's interests will not be compromised by their consideration.

We have yet to consider two other purposes said to be advanced by disentitlement: The need to redress the indignity visited upon the District Court by Degen's absence from the criminal proceeding, and the need to deter flight from criminal prosecution by Degen and others. Both interests are substantial, but disentitlement is too blunt an instrument for advancing them. Without resolving whether Degen is a fugitive in all the senses of the word debated by the parties, we acknowledge disquiet at the spectacle of a criminal defendant reposing in Switzerland, beyond the reach of our criminal courts, while at the same time mailing papers to the court in a related civil action and expecting them to be honored. Cf. *United States* v. *Sharpe*, 470 U. S. 675, 681–682, n. 2 (1985). A court-made rule striking Degen's claims and entering summary judgment against him as a sanction, however, would be an arbitrary response to the conduct it is supposed to redress or discourage.

The right of a citizen to defend his property against attack in a court is corollary to the plaintiff's right to sue there. *McVeigh* v. *United States*, 11 Wall., at 267. For this reason we have held it unconstitutional to use disentitlement similar to this as punishment for rebellion against the United States, *ibid.*, or, in at least one instance, for contempt of court, *Hovey* v. *Elliott*, 167 U. S. 409, 413–414 (1897). We need not, and do not, intimate a view on whether enforcement of a disentitlement rule under proper authority would violate due process, cf. *Blackmer* v. *United States*, 284 U. S. 421 (1932). It remains the case, however, that the sanction of disentitlement is most severe and so could disserve the dignitary purposes for which it is invoked. The dignity of a court derives from the respect accorded its judgments. That respect is eroded, not enhanced, by too free a recourse to rules foreclosing consideration of claims on the merits.

There would be a measure of rough justice in saying Degen must take the bitter with the sweet, and participate in the District Court either for all purposes or none. But the justice would be too rough. A court's inherent power is limited by the necessity giving rise to its exercise. There was no necessity to justify the rule of disentitlement in this case; to strike Degen's filings and grant judgment against him would be an excessive response to the concerns here advanced.

The judgment of the Court of Appeals is reversed, and the case is remanded for further proceedings consistent with this opinion.

*It is so ordered.*