United States Court of Appeals,

Fifth Circuit.

No. 96-50427.

UNITED STATES of America, Plaintiff-Appellee,

v.

REAL PROPERTY LOCATED AT 14301 GATEWAY BOULEVARD WEST, EL PASO COUNTY TEXAS, with all Appurtunances and Improvements Thereon, Defendant,

City of El Paso, et al., Claimants,

Eduardo Gonzalez Quirarte and Laura Patricia Gonzalez, Claimants-Appellants.

Sept. 26, 1997.

Appeal from the United States District Court for the Western District of Texas.

Before JONES, EMILIO M. GARZA and PARKER, Circuit Judges.

PER CURIAM:

The district court relied on the "fugitive disentitlement" doctrine to strike Eduardo Gonzalez Quirarte's and Laura Patricia Gonzalez's ("the claimants") claim and answer regarding the forfeiture of the respondent property. The Supreme Court has since held that the "fugitive disentitlement" doctrine does not permit a district court to enter summary judgment in favor of the government in a civil forfeiture case based on a claimant's fugitive status. *See Degen v. United States,* --- U.S. ----, 116 S.Ct. 1777, 135 L.Ed.2d 102 (1996). Thus, the claimants urge us to reverse the district court's forfeiture judgment based on *Degen.*

It is well-settled, however, that we will not reverse a judgment of the district court if it can be affirmed on any ground,

1

regardless of whether the district court articulated the ground. *United Indus., Inc. v. Simon-Hartley, Ltd.,* 91 F.3d 762, 765 n. 6 (5th Cir.1996); *see also Bickford v. International Speedway Corp.,* 654 F.2d 1028, 1031 (5th Cir.1981) ("[R]eversal is inappropriate if the ruling of the district court can be affirmed on any grounds, regardless of whether those grounds were used by the district court."). We have required strict compliance with the provisions of Rule C(6) of the Supplemental Rules for Certain Admiralty and Maritime Claims, the rule that governs the filing of claims and answers in forfeiture suits. *See United States v. $38,570 U.S. Currency,* 950 F.2d 1108, 1115 (5th Cir.1992) (finding that district court did not abuse its discretion in striking claim and answer as untimely under Rule C(6)).

Here, prior to ruling on the government's motion to strike the claim and answer, the district court denied the claimants' request for an extension of time in which to file their claim and answer. As a result, the claim and answer that the claimants ultimately filed were untimely. In granting the government's motion to strike, however, the district court did not address the timeliness of the filings.

Had the district court not specifically refused to extend the claimants' filing deadlines, we could perhaps construe the court's consideration of the merits of the motion to strike as an implicit, discretionary grant of an extension. *See* Supplemental Rules for Certain Maritime and Admiralty Claims, 28 U.S.C. Supplemental Rule C(6) ("The claimant of property that is the subject of an action in

2

rem shall file a claim within 10 days after process has been executed, or *within such additional time as may be allowed by the court* ...." ) (emphasis added). To the contrary, however, the district court denied the claimants an extension, thus indicating the court's intention that the claimants adhere to the time limits contained in Rule C(6). Accordingly, we will not construe the district court's consideration of the merits of the motion to strike as a discretionary extension of the filing deadlines. Rather than reaching the merits of the motion, the district court could have struck the claim and answer as untimely.

We AFFIRM on that ground.

EMILIO M. GARZA, Circuit Judge, specially concurring:

I write separately, joined by Judge Parker, to request the Supreme Court to reconsider its opinion in *Degen v. United States,* --- U.S. ----, 116 S.Ct. 1777, 135 L.Ed.2d 102 (1996), and consider *Degen*'s application on the southwestern border of the United States.

Clearly, the Court did not consider the practical effects of *Degen*'s application peculiar to the southwestern border. In *Degen,* a federal grand jury indicted Degen for distribution of marijuana, money laundering and other crimes, and the government sought the forfeiture of properties in California, Nevada and Hawaii allegedly purchased with proceeds of Degen's drug sales or used to facilitate the sales. Despite moving to Switzerland, a nation whose extradition treaty did not oblige it return Degen to the United States, Degen filed an answer in the civil action to contest

3

forfeiture. The district court granted a government motion to strike Degen's answer and entered summary judgment against him, holding that Degen was not entitled to be heard in the civil forfeiture action because he remained outside the country, unamenable to criminal prosecution. *United States v. Real Property Located at Incline Village,* 755 F.Supp. 308 (D.Nev.1990). The Ninth Circuit affirmed. *United States v. Real Property Located at Incline Village,* 47 F.3d 1511 (9th Cir.1995).

The Supreme Court reversed the Ninth Circuit, holding that the fugitive disentitlement doctrine did not permit the district court to enter summary judgment in favor of the government in a civil forfeiture case based on the claimant's fugitive status. The Court found that the district court had alternative means of protecting the government's interests and that therefore "the harsh sanction of absolute disentitlement" was not justified. *Degen,* --- U.S. at ----, 116 S.Ct. at 1782. The Court concluded that "[a] court made-rule striking Degen's claims and entering summary judgment against him as a sanction [for failing to appear in the criminal proceedings] ... would be an arbitrary response to the conduct it is supposed to redress or discourage." *Id.* at ----, 116 S.Ct. at 1783.

Regardless of the merit of the Court's concern for avoiding "an arbitrary response," the practical effect of the Court's decision is to encourage immigration to a "safe" country by creating a legal safe harbor for criminal defendants, an option particularly attractive to those defendants who reside and operate

4

their criminal enterprises in the southwestern states. The economy, recreation, history and people in Texas cities such as Brownsville, Laredo, Eagle Pass, Del Rio and El Paso are virtually integrated with their sister cities of Matamoros, Nuevo Laredo, Piedras Negras, Cuidad Acuna and Juarez respectively; presumably border cities in New Mexico, Arizona and California exhibit similar integration with their Mexican counterparts. Mexican and American citizens alike regularly cross the border to conduct business, to purchase necessities, to enjoy entertainment, and to visit relatives on "the other side." Indeed, for residents of border communities, crossing the international bridge is akin to visiting another part of town, not another nation. The international border is a barrier only in the legal sense that different laws govern each side of the line.

For the many United States district courts located in border districts, however, the border compounds, rather than eliminates, legal problems. Smuggling and its attendant crimes—whether they involve cattle and horses in frontier times, cotton during the Civil War, arms during the Mexican Revolution, whiskey during Prohibition or narcotics in the late twentieth century—are endemic to the southwest border. Control of crime along the southwestern border is a constant struggle for the courts and law enforcement organizations charged with that responsibility. *Degen* would further encourage defendants to flout the laws of this nation and to preserve both their liberty and their property by simply "moving across town" to the other side of the border. The Court also

exacerbates the difficulties most trial judges have managing their dockets. Even assuming the measures listed by the Court are effective "means to resolve these dilemmas," *id.* at --, --- U.S. at ----, 116 S.Ct. at 1782, they further overburden courts that are already handling upwards of 1,000 criminal indictments annually. In addition, the three examples the Court gives as means by which district courts can address the dilemmas presented by defendants who simultaneously flee criminal prosecution and contest civil forfeitures will only increase the drain on scarce judicial resources.

The instant case exemplifies my concerns about *Degen.* Here, a grand jury returned a superseding indictment against Eduardo Gonzalez Quirarte, Avelino Gil-Terrazas, and several other individuals charging them with various narcotics offenses. The government alleged that Quirarte and Terrazas were the principals in the organization, with Terrazas running the drug smuggling operations in the United States and Quirarte running the operations in Mexico. After trial, Terrazas was convicted of conspiracy to distribute marijuana and cocaine and of money laundering. The court sentenced him to 360 months in custody.

Quirarte, however, did not appear for trial, fleeing with his wife from El Paso, Texas to Ciudad Juarez, Mexico to avoid prosecution. Quirarte has never returned to the United States to answer the criminal charges against him. He has, however, contested the civil forfeiture proceeding the government instituted against him based on the drug trafficking and money laundering

6

activities alleged in the indictment. Protected by *Degen,* a criminal defendant such as Quirarte can make the short drive from El Paso to Juarez and thereby ensure both his immunity from the American criminal justice system and the protection of American civil laws. Surely the Supreme Court did not intend such a result.

As an aside, there are two federal judges in El Paso who preside over dockets with more than 400 criminal cases apiece. *Degen* will exacerbate, not "resolve [this] dilemma[ ]." *Id.,* --- U.S. at ----, 116 S.Ct. at 1782.

7