**In re the Application of John WALSH.**

**No. Civ.A. 98–11638–WGY.**

United States District Court,
D. Massachusetts.

June 11, 1999.

E. Chouteau Merrill, Brown, Rudnick, Freed & Gesmer, Boston, MA, for John Walsh, plaintiff.

Thomas J. Barbar, Anne Marie Corraro, Cambridge, MA, Robert G. Najarian, Jr., Law Offices of Donald H. Jackson, Jr., Hanover, MA, for Jaqueline Walsh, defendant.

Bernard J. Bonn, III, Dechert, Price & Rhoads, Boston, MA, for Martha R. Miller, interested party.

*MEMORANDUM AND ORDER*

YOUNG, Chief Judge.

A. Introduction

On December 18, 1998, this Court entered a Judgment and Findings of Fact and Conclusions of Law (collectively, "the Order") granting the petition of John Walsh under the International Abduction Remedies Act (the "Act"), 42 U.S.C. §§ 11601–11610 (1998), thereby requiring the return of his two young children, Eoghain and Mary Kate Walsh, to Ireland, their country of habitual residence. *See In re the Application of John Walsh,* 31 F.Supp.2d 200 (D.Mass.1998). In significant measure, this Order vindicates the dignity of the courts of Ireland. *See id.* at 207. While preparations were being made for the children's return, the children's mother, Jacqueline Walsh ("Jacqueline"), and their aunt, Martha Miller, filed a Motion to Dismiss or Vacate the Order on the basis of the "fugitive disentitlement" doctrine.

Under certain circumstances, the doctrine of fugitive disentitlement permits a court to dismiss proceedings brought before it by an individual who has challenged a court's dignity by fleeing its jurisdiction. This doctrine is potentially relevant to this action because the petitioner, John Walsh, fled the United States after he became the subject of a default warrant for assault with intent to murder in the Commonwealth of Massachusetts. While the Findings of Fact underlying this Court's Order have been determined and will not be reconsidered or disturbed, this Court stayed its Order for thirty days to consider the applicability of the fugitive disentitlement doctrine to the established record even though this legal challenge to the petition was not raised at trial.

B. Background

The facts of this case are described in great detail in the Order and will only briefly be recounted here. In 1993, John Walsh was arrested by the police in Malden, Massachusetts for assault with intent to murder a neighbor who he believed "had dealt the drugs that caused the death of another Malden youth from an overdose." *Id.* at 202. After his arraignment in 1994, but prior to trial, John fled to his homeland of Ireland. *See id.* Jacqueline, John's American wife, was "[p]regnant with their second child [and] followed" with their daughter Mary Kate. *Id.* A default warrant for the arrest of John Walsh issued thereafter in Massachusetts. *See id.*

After a few years of drinking, violence, and legal skirmishing, Jacqueline violated an Irish court order by absconding with the two children to Massachusetts. *See id.* Taking a sudden interest in his family, John Walsh filed a petition under the Act seeking the return of the children to Ireland. *See id.* As described above, this Court granted the petition but required John Walsh to make certain preparations before the children were to be returned. *See id.* Just as those preparations neared completion, Jacqueline and the children's aunt, as an intervenor, brought the instant Motion to Dismiss or Vacate.

John Walsh has conducted all of the described litigation from his distant home in Tramore, Ireland and has yet to make a personal appearance. This Court recently asked the Attorney General of the Commonwealth of Massachusetts whether he intended to "seek extradition of John Walsh under the Treaty of Extradition Between the United States of America and Ireland, T.I.A.S. No. 10813." *See* Letter from Young, C.J., to Massachusetts Attorney General Thomas Riley of January 21, 1999, at 1. To date, the Attorney General has not initiated any extradition proceedings.

C. Fugitive Disentitlement

█ The equitable doctrine of fugitive disentitlement "limits access to courts by a fugitive who has fled a criminal conviction in a court in the United States." *Magluta v. Samples,* 162 F.3d 662, 664 (11th Cir. 1998). In essence, this doctrine, were it to be applied in this case, seeks to vindicate the dignity of the orders of the Malden District Court. Under the doctrine, courts can "sanction parties where their fugitive status has some *connection* to the proceeding." *Pharaon v. Board of Governors of Fed. Reserve Sys.,* 135 F.3d 148, 151 (D.C.Cir.1998), *cert. denied,* —— U.S. ——, 119 S.Ct. 371, 142 L.Ed.2d 307 (1998) (emphasis added) (internal quotations omitted). The Supreme Court has emphasized the importance of this "nexus" requirement. *See Ortega–Rodriguez v. United States,* 507 U.S. 234, 246, 113 S.Ct. 1199, 122 L.Ed.2d 581 (1993) (refusing to expand fugitive disentitlement doctrine and dismiss proceedings for "any conduct that exhibited disrespect for any aspect of the judicial system" because "[s]uch a rule would sweep far too broadly...").

Recently, under circumstances similar to the present case, the Sixth Circuit invoked the doctrine of fugitive disentitlement to dismiss a petition under the Act. *See Prevot v. Prevot,* 59 F.3d 556, 566–67 (6th Cir.1995). Even though fugitive disentitlement is not contemplated by the Act, the *Prevot* court held "nothing in the Convention or the Act [ ] purports to strip an American court of the powers inherent to it as a court." *Id.* at 566. Since the respondents essentially rest their entire argument on *Prevot,* a careful comparison of the factual underpinnings of *Prevot* to the record in this case is required. Such comparison, coupled with recent Supreme Court teachings and the absence of any active extradition proceedings against John Walsh, counsel this Court to deny the Motion to Dismiss or Vacate.

D. *Prevot v. Prevot*

In *Prevot,* Jean–Claude Prevot brought a petition under the Act to obtain the return of his two children to France after his wife, Debra, had removed them to the United States. *See id.* at 558. Several years earlier, Jean–Claude had fled the United States with Debra and the children to avoid court ordered restitution payments that were part of a plea arrangement entered in a theft charge against him in a Texas state court. *See id.* at 558–559. By fleeing the United States, Jean–Claude violated his probation and would have faced a ten-year prison term were he to return to the United States. *See id.* at 559. Despite Mr. Prevot's fugitive status, the District Court granted the petition and ordered the children returned to France. *See Prevot v. Prevot,* 855 F.Supp. 915, 922 (W.D.Tenn.1994). On appeal, the Sixth Circuit reversed and remanded with instructions to dismiss. *See Prevot,* 59 F.3d at 567.

After exhaustively discussing the history of and various rationales for the fugitive disentitlement doctrine, and recognizing that its application to the Act was a matter of first impression, the Sixth Circuit reasoned that the petition should have been dismissed on the grounds that the petitioner's "fugitivity, and his actions, constitute abuses to which a court should not accede." *Id.* at 567. As for the requisite nexus, the court stated:

Mr. Prevot's flight and his subsequent invocation of [the Act] were ... "related components of a general scheme." He fled to escape his criminal conviction and other responsibilities to court, probation officers, victim and government, and to assemble and hold his family in a refuge beyond the reach of American courts and American responsibilities. In Mr. Prevot's hands [the Act] is a tool used to permit him to escape American justice and responsibilities while holding his children with him. Flight was but one step, and [a claim under the Act] the latest link, in a chain of proximately related events that began with the Texas conviction and ended in the district court proceedings in this case. It is obvious that if Mr. Prevot returned to the United States and was imprisoned he could not successfully maintain [a claim under the Act.] Either the habitual residence of the children would have changed, or they would no longer be in his custody, or the exceptions relating to risk of harm to the children would apply.

*Id.*

■ Respectfully, this Court cannot endorse the Sixth Circuit's reliance on *Prevot*'s tenuous chain-of-events analysis to support application of the fugitive disentitlement doctrine. The *Prevot* court merely glamorizes an unrelated act of "judicial defiance" in contravention of the Supreme Court's teachings in *Ortega–Rodri-*

*guez. See Ortega–Rodriguez*, 507 U.S. at 246, n. 17, 113 S.Ct. 1199. The reasoning in *Prevot* renders the nexus requirement meaningless—any flight from justice and later attempt to reunite family could easily be dubbed a "chain of proximately related events" and automatically disentitle a fugitive from proceeding under the Act.[1]

Even if this Court chose to follow *Prevot* and essentially abandon the nexus requirement, the fact that John Walsh merely eluded a criminal allegation, rather than a conviction, prevents this Court from extending the *Prevot* holding to the facts of this case. As recounted above, the Sixth Circuit emphasized that Mr. Prevot could not "successfully maintain" a claim under the Act if he were to return to the United States because he faced certain imprisonment. *Prevot*, 59 F.3d at 567. Without a waiting caretaker, the court could not have ordered the return of the Prevot children to France. *See id.* Here, however, John Walsh would return to face a fair trial with the corresponding presumption of innocence. He might very well return to Ireland after resolution of his case and "successfully maintain" his petition. Accordingly, this Court refuses to apply the fugitive disentitlement doctrine in the absence of stronger precedent.[2]

### E. Extradition

As a final matter, although John Walsh has participated in this litigation from his

---

**1.** The intervenor similarly attempts to elevate the chain-of-events in this case to the level of a nexus by stating that John Walsh "[set t]he international stage." Intervenor Rep.Mem. at 1; Jan. 20 Mot.Sess.Tr. at 3. No matter what the chain of events is called, it still does not constitute a nexus.

**2.** Counsel for John Walsh also argue that *Prevot* was implicitly overruled by *Degen v. United States*, 517 U.S. 820, 116 S.Ct. 1777, 135 L.Ed.2d 102 (1996), wherein the Supreme Court held that striking a fugitive defendant's pleadings in a civil forfeiture action, and subsequently entering summary judgment against him, was "too blunt an instrument for advancing" the need to redress indignity visited upon the District Court. *Id.* at 828. While *Degen* certainly is in tension with *Prevot*, it

does not overrule *Prevot*. The key distinction between *Degen* and *Prevot* is the manner in which fugitive disentitlement was asserted. In *Prevot*, fugitive disentitlement was used as a shield to prevent a fugitive from *bringing* claims in an American court. In *Degen*, on the other hand, the government attempted to use fugitive disentitlement as a sword to prevent a fugitive from *responding* to claims brought against him in an American court. *Degen* also does not control the outcome of the present case because the Supreme Court "acknowledge[d] disquiet" in the fact that the fugitive in that case conducted his litigation from Switzerland where he was not subject to extradition. *Id.* at 828. In this case, however, the fugitive in question is subject to extradition. *See infra* Part E.

"hideout" in Ireland, *see* Intervenor Rep. Mem. at 1, he has never actually been outside the reach of the Massachusetts authorities. Under the Treaty of Extradition Between the United States of America and Ireland, Jan. 3, 1985, T.I.A.S. No. 10813, the United States and Ireland "agree[ ] to extradite to the other, ... any persons, including its citizens or nationals, who are wanted for prosecution or the imposition or enforcement of a sentence in the Requesting State for an extraditable offense." [3] *Id.* at art. 1. While this Court fully recognizes that extradition is neither a straightforward nor simple legal device, the failure of Massachusetts authorities even to initiate extradition proceedings after four years and a direct inquiry by this Court suggests that, given the array of other pressing issues confronting the Massachusetts Attorney General, vindication of the warrant of the Malden District Court is not particularly high on his list. *But see Cellucci Targets Backlog of Outstanding Warrants,* Boston Globe, Jan. 21, 1999, at F8 (discussing Massachusetts Governor Paul Cellucci's newly announced plan to make fugitives more accountable to the courts in wake of recent report of State Senator Cheryl Jacques detailing backlog of 275,000 outstanding warrants). Thus, even if this Court were empowered to apply the doctrine of fugitive disentitlement to this case, which it is not, it would be reluctant to apply a protectionist doctrine in order itself to champion the Commonwealth's judicial system when the Commonwealth's own chief law enforcement officer appears unwilling to devote enforcement resources to the same issue. *Cf. Ortega–Rodriguez,* 507 U.S. at 246, 113 S.Ct. 1199 (holding that Court of Appeals should not have applied fugitive disentitlement doctrine when fugitive had been recaptured because District Court had "authority to *defend its own dignity,* by sanctioning an act of defiance that occurred solely within its domain") (emphasis added).

3. A review of the treaty clearly indicates that the charge pending against John Walsh in

F. Conclusion

For the foregoing reasons, the Motion to Dismiss or Vacate is DENIED. However, in view of the fact that the issues addressed in the Court's December 18, 1998 Order and the present Memorandum and Order concern matters of first impression in the First Circuit, execution of the Order is STAYED pending appeal.

Massachusetts is an "extraditable offense." *See id.* at art. 2.