# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 01-1211

_____

| | | |
|---|---|---|
| Matthew W. Barnett, | * | |
| | * | |
| Appellant, | * | |
| | * | |
| v. | * | Appeal from the United States |
| | * | District Court for the Western |
| Young Men's Christian Association, | * | District of Missouri. |
| Inc.; George Hartsfield, Director, | * | |
| | * | |
| Appellees. | * | |

_____

Submitted:  September 13, 2001

Filed:  October 15, 2001

_____

Before HANSEN and BEAM, Circuit Judges, and BOGUE,[1] District Judge.

_____

BEAM, Circuit Judge.

Appellant Barnett sued the Jefferson City Area Young Men's Christian Association, Inc. (YMCA) while he was an inmate in the Missouri Department of Corrections.  Barnett claimed the wage he was paid under a work release program violated the minimum wage provisions of the Fair Labor Standards Act (FLSA).

_____

[1]The Honorable Andrew W. Bogue, United States District Judge for the District of South Dakota, sitting by designation.

During the course of the proceedings, the district court dismissed the case under the fugitive from justice rule, also called the fugitive disentitlement doctrine. Prior to dismissal, Barnett had walked away from a half-way house in Kansas City where he was paroled and could not be found for a period of several months. The district court concluded that because Barnett had been absent for an extended period and had disrupted the court's schedule, dismissal was appropriate. We disagree.

## I.    BACKGROUND

Barnett was an inmate in the Missouri Department of Corrections (MDOC). Pursuant to an agreement between the MDOC and the YMCA, Barnett worked for the YMCA as part of an organized work release program. He was employed at the YMCA from August 1997 until December 1997, and was compensated for his labor at a rate of one dollar ($1.00) per hour.

On April 17, 1998, Barnett filed this case pro se asserting claims under the FLSA as well as several state claims. The district court first dismissed the case on June 2, 1998, finding that prisoners are not employees covered by the FLSA and therefore Barnett had not alleged facts invoking federal question jurisdiction on that issue. On appeal, we held that prisoners are not necessarily excluded from coverage under the FLSA and that Barnett had stated a claim under the FLSA. The case was remanded to the district court for further proceedings.

YMCA subsequently filed a motion for summary judgment on September 21, 1999, and Barnett responded by filing a response in opposition to summary judgment on October 12, 1999. It was not until April 21, 2000, that the magistrate judge recommended that the motion for summary judgment be granted and that the claims be dismissed. Barnett then filed exceptions to that recommendation on May 15, 2000.

During relevant times, Barnett was released from confinement in the MDOC and resided in the Kansas City Community Center as part of his parole. On or about April 1, 2000, Barnett failed to return to the Center and was deemed to be in violation of his parole. Barnett's attorney was not aware of this violation and states that during this time Barnett maintained telephone contact with him at least intermittently.

On June 20, 2000, the magistrate judge ordered a telephone conference to discuss Barnett's whereabouts. Barnett's attorney states that he appeared on his client's behalf via telephone on June 29, 2000. During that conference, the court inquired as to his attorney's knowledge of Barnett's physical location. Barnett's attorney indicated he did not know Barnett's specific location but that he did receive periodic phone calls from Barnett.

On July 6, 2000, the magistrate judge ordered that the parties investigate Barnett's location. The court further ordered that if Barnett was not found, the parties should file any appropriate motions regarding Barnett's status. YMCA filed a motion to dismiss on July 11, 2000. An order to show cause was issued on August 2, 2000, in response to YMCA's motion, and Barnett informed the court of his changed address and location on or about August 11, 2000. Barnett's attorney then filed suggestions in opposition to the motion to dismiss on August 31, 2000.

Finally, on September 22, 2000, the district court ruled that the lawsuit should be dismissed with prejudice due to Barnett's status as a fugitive from justice. Barnett appeals that ruling.

## II. DISCUSSION

"Courts invested with the judicial power of the United States have certain inherent authority to protect their proceedings and judgments in the course of discharging their traditional responsibilities." Degen v. United States, 517 U.S. 820,

-3-

823 (1996) (citations omitted).  The fugitive disentitlement doctrine provides a federal court with a basis for dismissal in select criminal and civil cases.  Perko v. Bowers, 945 F.2d 1038, 1039-40 (8th Cir. 1991).  In light of that power, "a court should exercise its discretion in determining whether to dismiss a criminal defendant's civil case based upon the circumstances of each individual case."  Id. at 1040 (citation omitted).  Principles of deference counsel against utilizing this inherent authority and require its use only as a reasonable response to the problems and concerns that provoke it.  Degen, 517 U.S. at 823-24.

In Perko we refused to allow dismissal pursuant to the fugitive disentitlement doctrine in a civil suit brought by a criminal defendant.  Perko, 945 F.2d at 1040.  Traditionally under this doctrine, a criminal defendant forfeits his right to appeal once he removes himself from the court's power and process by escaping custody and remaining at large during the pendency of his appeal.  Id. at 1039; see also Ortega-Rodriguez v. United States, 507 U.S. 234, 242 (1993) (stating that the Court unequivocally approves dismissal as an appropriate sanction when a prisoner is a fugitive during the ongoing appellate process).

Since our ruling in Perko, however, the Supreme Court has reviewed application of the fugitive disentitlement doctrine in two significant cases, both regarding dismissals under the doctrine by appellate courts.  See Degen, 517 U.S. 820 (1996); Ortega-Rodriguez, 507 U.S. 234 (1993).  In Ortega-Rodriguez, the Court held that federal courts have the authority to dismiss an appeal if the petitioner is a fugitive while the matter is pending.  Ortega-Rodriguez, 507 U.S. at 239.  The defendant there, however, fled the jurisdiction of the district court and was recaptured *before* he invoked the jurisdiction of the appellate tribunal.  Id. at 242.  The Court vacated the dismissal of the criminal appeal because the fugitive was recaptured.  Id. at 252.  The Court recognized that while the petitioner flouted the dignity of the district court with his fugitive status, the authority of the court of appeals was not affected because the appeal was filed after he was recaptured.  Thus, it was not within the authority of the

-4-

court of appeals to dismiss the case. Id. at 246. The Court clearly called for a connection between a defendant's fugitive status and his appeal before a federal court was empowered to dismiss. Id. at 249.

A second application of the fugitive disentitlement doctrine was addressed in Degen, which involved a fugitive as a defendant in a civil action. In Degen the Court unanimously held that the disentitlement doctrine does not allow "a court in a civil forfeiture suit to enter judgment against a claimant because he is a fugitive from, or otherwise is resisting, a related criminal prosecution." Degen, 517 U.S. at 823. The Court reached this decision by reviewing the following underlying justifications for the disentitlement doctrine: (1) risk of delay or frustration in determining the merits of the claim; (2) danger that the judgment in the civil case will be unenforceable; (3) risk of compromising the criminal prosecution by use of civil discovery mechanisms; (4) the need to redress the indignity visited upon the court by a fugitive's absence; and (5) the need to deter flight from criminal prosecution. Id. at 825, 828.

Focusing on the first two justifications, the Court held there was no risk of delay or frustration, nor unenforceability, in following through with the civil forfeiture claim while the criminal claim was pending. Id. at 825. The Court further held that the third factor was unnecessary because the district court had its usual authority to manage discovery so as to avoid risk of compromising a pending criminal prosecution. Id. at 826. The Court also discounted factors four and five (indignity and deterrence) as legitimate justifications advanced by disentitlement in a civil context. Id. at 828. The Court quite clearly stated that dismissal under the disentitlement doctrine "would be an arbitrary response to the conduct it is supposed to redress or discourage." Id. Ultimately, the Degen Court held that "[t]he dignity of a court derives from the respect accorded its judgments. That respect is eroded, not enhanced, by too free a recourse to rules foreclosing consideration of claims on the merits." Id.

The case before us today stands in a third, distinct procedural posture that the Supreme Court has yet to analyze in its fugitive disentitlement jurisprudence. Here, the fugitive is a plaintiff in a civil suit. We find that the same factors set forth in Degen apply to civil cases where the fugitive is a plaintiff. We base our review of a dismissal pursuant to the fugitive disentitlement doctrine on the underlying justifications for disentitlement, recognizing that their applicability will vary on a case-by-case basis.

We adopt the reasoning of the Eleventh and First Circuits regarding dismissal of civil actions on fugitive disentitlement grounds involving cases where the fugitive is the plaintiff. The fugitive status must have a connection to the civil action, and the dismissal must animate the concerns underlying the fugitive disentitlement doctrine. See Walsh v. Walsh, 221 F.3d 204, 215 (1st Cir. 2000), cert. denied, 121 S. Ct. 1113 (2001) (citing Magluta v. Samples, 162 F.3d 662, 664 (11th Cir. 1998) (per curiam)).

On the facts before us, we hold that the fugitive disentitlement doctrine does not apply. Although Barnett was a fugitive for some time, there is no substantial connection between Barnett's fugitive status and his current civil action. The district court recognized that this civil case is completely separate from the sentence Barnett was serving at the time of his escape. Further, dismissal is not necessary to effectuate the concerns underlying the fugitive disentitlement doctrine.

The district court found that Barnett's escape inconvenienced the court schedule and wasted the court's time. We find no basis for this conclusion. The district court was in no way inhibited from setting a trial date or ruling on the motions before it at the time of Barnett's escape and subsequent return. His physical presence as a civil litigant was not required at that time. But see Degen, 517 U.S. at 827 (recognizing appropriate sanctions might be warranted against any uncooperative party if a civil litigant's failure to appear results in non-compliance with a legitimate order of the court respecting pleading, discovery, the presentation of evidence or other matters). At the time this

case was dismissed, the district court merely surmised that delay might occur in the future. The parties were waiting for a ruling on the motion for summary judgment pending before the court. We fail to recognize how the court was delayed at all.

The district court did not rest its opinion upon concerns of unenforceability or the compromising of the criminal case by civil discovery mechanisms. Accordingly, we need not address these concerns at this time.

## III. CONCLUSION

As the Court noted in Degen, while "[t]here would be a measure of rough justice in saying [that a fugitive] must take the bitter with the sweet, and participate in the District Court either for all purposes or none . . . the justice would be too rough." Id. at 829. It would be particularly harsh in this case because Barnett remained in contact with his attorney in the civil matter, his presence was not required at any stage of the proceedings at issue, and he has now returned to custody.

The judgment of the district court is reversed, and the case is remanded for further proceedings consistent with this opinion.

A true copy.

Attest:

CLERK, U.S. COURT OF APPEALS, EIGHTH CIRCUIT.