**UNITED STATES of America, Plaintiff,**

v.

**$1,231,349.68 IN FUNDS, et al., Defendants.**

**Jose Maria Sampedro, Claimant.**

**No. CIV.A.01–1725(PLF).**

United States District Court, District of Columbia.

Sept. 26, 2002.

See, also, 227 F. Supp.2d 125.

Linda Otani McKinney, U.S. Attorney's Office. Washington, DC, for plaintiff.

Coke Morgan Stewart, Washington Lawyer's Committee, Washington, DC, for defendants.

Coke Morgan Stewart, Washington Lawyer's Committee, Washington, DC, Peter Hugh White, Hunton & Williams, McLean, VA, for Jose M. Sampedro, claimant.

Coke Morgan Stewart, Washington Lawyer's Committee, Washington, DC, James Francis Hibey, Howrey Simon Arnold & White, LLP, for Laura Victoria Sampedro, Maria Aurora Sampedro, claimants.

Mark A. Srere, Morgan, Lewis & Bockius, L.L.P., Washington, DC, for C.P.F. Corp., claimant.

*MEMORANDUM OPINION AND ORDER*

PAUL L. FRIEDMAN, District Judge.

Claimant Jose Maria Sampedro has filed—through his attorney-in-fact, Maria Aurora Sampedro, his wife—a motion for an indefinite extension of time in which to answer the complaint for forfeiture in this case. Through counsel, Mr. Sampedro also has filed a motion under 18 U.S.C.

§ 981(g)(2) to stay these proceedings. Plaintiff, the United States of America, opposes both motions and has filed motions to strike Mr. Sampedro's initial claim and his claim with respect to the amended verified complaint.

## I. BACKGROUND

Jose Maria Sampedro was the President of the CPF Corporation—a business that contracted with the District of Columbia and the federal government to perform janitorial services at various District of Columbia and federal government buildings. During an investigation of Edward David, an official of the District of Columbia government, the FBI and the District of Columbia Office of the Inspector General uncovered evidence which they believed shows that through much of the 1990's and up until March of 2001, Mr. Sampedro paid bribes to D.C. officials and defrauded the United States. As a result of the investigation, the FBI obtained and executed a search warrant of Mr. Sampedro's residence and CPF's corporate headquarters. On March 21, 2001, a warrant for Mr. Sampedro's arrest was issued. Six days before the arrest warrant was issued, however, Mr. Sampedro fled to Spain.

On August 13, 2001, the United States filed an *in rem* complaint for civil forfeiture. Mr. Sampedro, through his attorney-in-fact, moved for an indefinite extension of time in which to answer the complaint. The United States filed an opposition to this motion and a motion to strike Mr. Sampedro's claim. On November 16, 2001, the United States filed an amended complaint. Mr. Sampedro filed an amended claim.

On November 29, 2001, Spanish authorities arrested Mr. Sampedro in Spain and began extradition proceedings. *See* Plaintiff's Opposition to Jose Maria Sampedro's Motion to Stay the Proceedings and Memorandum of Points and Authorities ("Pl.'s Opp. to Motion to Stay") at 3, Attachment I-b, Translation of the Transcript of Extradition Hearing ("Tr."). At the extradition hearing Mr. Sampedro explained that he fled the United States and is resisting extradition because he feels that the United States government has treated him unfairly during its investigation of his alleged criminal activities. *See* Tr. at 1–2. On March 28, 2002, a federal grand jury in the District of Columbia returned a 23–count indictment against Mr. Sampedro charging him with conspiracy, bribery, mail fraud, wire fraud, aiding, abetting and causing an act to be done, money laundering, and interstate transportation of stolen property. *See United States v. Sampedro,* Criminal No. 02–0153, Indictment (D.D.C. March 28, 2000). In the indictment, the government also seeks criminal forfeiture under 18 U.S.C. § 982.

## II. DISCUSSION

The central issue that the Court must resolve is whether the fugitive disentitlement doctrine applies in a civil forfeiture proceeding related to a criminal prosecution. In its original incarnation, the fugitive disentitlement doctrine was created to make clear "the authority of an appellate court to dismiss an appeal or writ in a criminal matter when the party seeking relief becomes a fugitive." *Degen v. United States,* 517 U.S. 820, 823, 116 S.Ct. 1777, 135 L.Ed.2d 102 (1996). In *Degen,* the Supreme Court considered "whether the doctrine should be extended to allow a federal district court in a civil forfeiture suit to enter judgment against a claimant because he is a fugitive from, or otherwise is resisting, a related criminal prosecution." *Id.* The Supreme Court held that although the "need to address the indignity visited upon the District Court by [a fugitive's] absence from [a] criminal pro-

ceeding, and the need to deter flight from criminal prosecution" were substantial interests, disentitlement was "too blunt an instrument for advancing them" and too harsh a sanction. *Id.* at 828, 116 S.Ct. 1777. The Supreme Court therefore reversed the court of appeals which had affirmed the district court's decision to enter judgment against a claimant on the basis of his fugitivity. *See id.* at 828–29, 116 S.Ct. 1777.

Although the Supreme Court in *Degen* held that the district court improperly applied the fugitive disentitlement doctrine when granting judgment against the claimant because of his fugitive status, it expressly reserved judgment on the question of "whether enforcement of a disentitlement rule under proper authority would violate due process." *Degen v. United States,* 517 U.S. at 828, 116 S.Ct. 1777. The Court left open the possibility that Congress could enact legislation to permit courts to enter judgment against a fugitive-claimant or to strike the claim of an individual who is a fugitive from justice. In the Civil Asset Forfeiture Reform Act of 2000, Congress did just that, providing:

A judicial officer may disallow a person from using the resources of the courts of the United States in furtherance of a claim in any related civil forfeiture action or a claim in third party proceedings in any related criminal forfeiture action upon a finding that such person—

(1) after notice or knowledge of the fact that a warrant or process has been issued for his apprehension, in order to avoid criminal prosecution—

(A) purposely leaves the jurisdiction of the United States;

(B) declines to enter or reenter the United States to submit to its jurisdiction; or

(C) otherwise evades the jurisdiction of the court in which a criminal

case is pending against the person; and

(2) is not confined or held in custody in any other jurisdiction for commission of criminal conduct in that jurisdiction.

28 U.S.C. § 2466(a). The question now before this Court is whether under the facts presented, the Court should strike Mr. Sampedro's claim, or whether it should grant the motion for an indefinite extension of time in which to answer or the motion to stay the proceedings.

In Mr. Sampedro's case, the March 21, 2001 arrest warrant was issued six days after he left the United States on March 15, 2001. Prior to his departure, however, he knew that a search warrant had been executed on his residence and his business's corporate office on July 12, 2000, and he had been interviewed by the FBI regarding the allegations against him at least three times—on November 30, 2000, December 11, 2000, and February 1, 2001. All of this activity certainly made him aware what allegations were being made and that the government was considering bringing criminal charges against him. In the transcript of Mr. Sampedro's extradition hearing, he concedes that while a fugitive in Spain, he was aware of the United States government's extradition request and the continuing investigation of his alleged criminal conduct. *See* Tr. at 1–2. Under these facts, the Court concludes that Mr. Sampedro had notice or knowledge of the warrant issued for his arrest. *See* 28 U.S.C. § 2466(a)(1). Moreover, based on his flight to Spain and his statement at the extradition hearing, the Court finds that all three of the conditions enumerated in Section 2466(a)(1) of the Civil Asset Forfeiture Reform Act also have been met. Mr. Sampedro purposely left the United States; he has declined to return voluntarily or submit to the jurisdic-

tion of the United States; and he is otherwise evading the jurisdiction of the court in which a criminal proceeding is pending against him. *See* Tr. at 1–3. Finally, his arrest in Spain is not confinement or custody for criminal conduct committed in another jurisdiction. *See* 28 U.S.C. § 2466(a)(2). Rather, his confinement in Spain relates specifically to the alleged criminal conduct for which he was indicted in this Court.

In his extradition proceeding, Mr. Sampedro contended that he did not go to Spain to flee justice or avoid prosecution but rather because he felt that the United States government had treated him unfairly in its investigation of him. He contended that he fled to Spain because he is innocent of any criminal conduct and wishes to fight these charges. *See* Tr. at 1–2. Until his capture by Spanish authorities, however, Mr. Sampedro demonstrated no interest in defending himself against these criminal charges or in contesting this civil forfeiture. In fact, his wife represents in the motion for an extension of time that even she did not know of his whereabouts, safety or health. The fact that he seeks an indefinite extension of time provides additional support for the proposition that Mr. Sampedro's intent was and is to avoid returning to the United States and facing the charges against him for as long as possible. If it truly is his intent to defend himself against the charges in the indictment and to contest the forfeiture action, he has one clear option—return to the United States. Instead, Mr. Sampedro, aware of the allegations against him, fled the country and now continues to avoid prosecution by opposing extradition. *See* Tr. at 1. This is precisely the type of situation that Congress intended to address when it enacted the Civil Asset Forfeiture Reform Act of 2000. The Court therefore denies the motion for extension of time to answer the complaint, and grants plaintiff's motions to strike Mr. Sampedro's claim to the amended verified complaint and to treat the first motion to strike as conceded because it was not responded to.

Mr. Sampedro also has moved to stay the forfeiture proceedings against him under 18 U.S.C. § 981(g)(2). The Court does not need to determine whether Mr. Sampedro meets the requirements of Section 981(g)(2) because the language of the statute makes clear that only a claimant to a civil forfeiture action may seek a stay of the proceedings under this provision. Because the Court has granted the government's motion to strike Mr. Sampedro's claim, he may not seek a stay under this statute. For all of these reasons, it is hereby

ORDERED that claimant Jose Maria Sampedro's motion to extend time to answer the complaint [20–1] is DENIED; it is

FURTHER ORDERED that claimant Jose Maria Sampedro's motion to stay the proceedings [41–1] is DENIED; it is

FURTHER ORDERED that plaintiff's motion to strike the claim of Jose Maria Sampedro [24–1] is GRANTED; it is

FURTHER ORDERED that plaintiff's motion to strike the claim of Jose Maria Sampedro to the amended verified complaint for forfeiture *in rem* [38–2] is GRANTED; and it is

FURTHER ORDERED that plaintiff's motion to treat as conceded plaintiff's motion to strike the claim of Jose Maria Sampedro is [38–1] GRANTED.

SO ORDERED.