**UNITED STATES of America**

v.

**Timothy MILLER, Defendant.**

**14–CR–175–A**

United States District Court, W.D. New York.

Signed January 20, 2016

Kathleen Ann Lynch, United States Attorney's Office, Buffalo, NY, for United States of America.

## DECISION AND ORDER

RICHARD J. ARCARA, UNITED STATES DISTRICT JUDGE

Timothy Miller has been charged in a two-count superseding indictment with (1) conspiring to violate the International Parental Kidnapping Crime Act (IPKCA) and (2) aiding and abetting a violation of the

IPKCA. To date, however, Miller has not been arraigned on either of the two indictments that have been handed up in this case. Briefs filed on Miller's behalf indicate that he is currently living in Nicaragua. *See* Docket 64 at 1–2.

Nonetheless, Miller, through his attorney, has moved to dismiss the superseding indictment against him, moved for an evidentiary hearing, and moved for specific performance of a cooperation agreement between him and the U.S. Attorney's Office for the District of Vermont. Magistrate Judge McCarthy, to whom the Court referred this case for all pre-trial matters, issued a report and recommendation recommending that the Court decline to consider these motions unless and until Miller is arraigned. Miller has filed objections to that recommendation. For the reasons discussed below, the Court adopts Magistrate Judge McCarthy's report and recommendation.

## DISCUSSION

■ As its name suggests, the fugitive disentitlement doctrine "disentitles [a] defendant to call upon the resources of the Court for determination of his claims" while he remains a fugitive. *Molinaro v. New Jersey*, 396 U.S. 365, 366, 90 S.Ct. 498, 24 L.Ed.2d 586 (1970) (per curiam). The doctrine arises from the federal courts' "inherent authority to protect their proceedings and judgments in the course of discharging their traditional responsibilities." *Degen v. United States*, 517 U.S. 820, 823, 116 S.Ct. 1777, 135 L.Ed.2d 102 (1996). The doctrine thus has many practical purposes, such as "discourag[ing] ... escape" and "encourag[ing] voluntary surrenders." *Id.* at 824, 116 S.Ct. 1777. It also "promotes the efficient, dignified operation of the courts." *Id.* And, at its most basic level, the doctrine prevents a defendant from engaging in one-sided litigation in which "a decision in [his] favor ... would benefit him, but a decision against

him would not be enforceable or would not operate to his disadvantage." *United States v. Hayes*, 99 F.Supp.3d 409, 416 (S.D.N.Y.2015).

■ Miller makes a threshold argument, however, that none of these concerns are relevant to him because he is not a "fugitive." That is so, Miller claims, because he did not *flee* from the United States upon learning of charges against him. Instead, he claims that he simply chose not to return to the United States once he was indicted in this district.

■ This is a meaningless distinction. The primary purpose of the fugitive disentitlement doctrine—promoting mutuality of litigation—is served both when a defendant flees the United States and when he chooses to remain outside the United States. Thus, "[a] defendant who knowingly fails to appear for an arraignment is a fugitive." *United States v. Buck*, No. 13 Cr. 282(VM), 2015 WL 195872 at *2 (S.D.N.Y. Jan. 9, 2015). It is entirely irrelevant whether "the defendant leaves the jurisdiction intending to avoid prosecution, or, having learned of charges while legally outside the jurisdiction, 'constructively flees' by deciding not to return." *United States v. Catino*, 735 F.2d 718, 722 (2d Cir.1984). As a result, the Court agrees with Magistrate Judge McCarthy that Timothy Miller is a fugitive.

■ The question, then, is whether, having concluded that Miller is a fugitive, the Court should exercise its discretion to decline to entertain his pre-trial motions. The Second Circuit has identified several reasons for exercising this discretion, including "1) assuring the enforceability of any decision that may be rendered against the fugitive; 2) imposing a penalty for flouting the judicial process; 3) discouraging flights from justice and promoting the efficient operation of the courts; and 4)

avoiding prejudice to the other side caused by the defendant's escape." *Bano v. Union Carbide Corp.*, 273 F.3d 120, 126 (2d Cir.2001). Weighing these factors, Magistrate Judge McCarthy concluded that the fugitive disentitlement doctrine should apply to Miller. The Court finds no fault with that conclusion.

Miller's primary objection is that Magistrate Judge McCarthy made his recommendation "[w]ithout a hearing" and that he failed to look to Miller's conduct in the Vermont case that relates to this one, in which Miller entered into a cooperation agreement with the U.S. Attorney's Office for the District of Vermont. *See, e.g.*, Docket 71–1 at 5–6.

Miller, however, points to no authority requiring the Court to hold a hearing before it decides to invoke the fugitive disentitlement doctrine. Indeed, given that one of the doctrine's purposes is to "allow[ ] a court to refrain from expending its resources on an application presented by a fugitive," *Hayes*, 99 F.Supp.3d at 415, it seems remarkable that the Court would be required to hold an evidentiary hearing *before* it could decide not to waste its resources deciding a motion that might never be enforced. In any event, the Court does not require a hearing to answer the critical question of whether Miller is currently a fugitive.

Further, Miller's conduct in the Vermont case has little relevance here. The Second Circuit has underscored that the purpose of the fugitive disentitlement doctrine is to allow a court to "ensure the enforceability of *its* decisions; to discourage flouting *its* process; to discourage flights from *its* administration of justice; or to avoid prejudice to the other side affecting litigation that is or may be before *it*." *Bano*, 273 F.3d at 125–26 (emphases in original). It is therefore Miller's conduct before *this* Court, and not the U.S. District Court for the District of Vermont,

that is relevant. Accordingly, Miller's conduct in this case—his failure to appear for arraignment—is what drives the Court's conclusion.

Finally, Miller argues that if the Court ruled on the merits of his motions, "[t]he only true prejudice to the government ... is the likelihood that the relief Mr. Miller requests would be granted." Docket 71–1 at 7. "In that event," Miller argues, "the indictment against him would be dismissed." But that is *exactly* why the Government would be prejudiced. It would be unable to try Miller for the crimes with which he is charged. Thus, it is simply irrelevant whether, as Miller argues, "the government would continue to prosecute Mr. Zodhiates" if the Court entertained Miller's motions and dismissed the indictment against him. *Id.* The prejudice to the Government does not diminish simply because the Government is still able to prosecute one of the three defendants in this case.

## CONCLUSION

For the reasons stated above, the Court adopts Magistrate Judge McCarthy's report and recommendation, Docket 69. The Court will not entertain any of Timothy Miller's pre-trial motions unless and until he returns to the United States and is arraigned in this case.

**SO ORDERED.**