**UNITED STATES of America**

**v.**

**Vincent J. CROCE, et al.**

**No. CRIM.02–819–01, CRIM.02–819–02, CRIM.02–819–03.**

United States District Court,
E.D. Pennsylvania.

Nov. 19, 2004.

W. Scott Magargee, Cozen & O'Connor, Philadelphia, PA, for Vinent Croce.

Gilbert J. Scutti, Dickstein and Scutti, Philadelphia, PA, for Brian Rose.

Jeffrey Mi. Miller, Nasuti & Miller, Philadelphia, PA, for Joseph A. Quattrone, Jr.

Jeremy H. Gonzalez Ibrahim, Law Offices of Jeremy H. Gonzalez Ibrahim, Philadelphia, PA, for Lisa A. Iacono.

Louis D. Lappen, U.S. Attorney's Office, Philadelphia, PA, for U.S.

## MEMORANDUM

DALZELL, District Judge.

The Government has asked us to reconsider[1] our recent opinion holding that we lack the authority to impose nonspecific and unlimited forfeiture money judgments. *See United States v. Croce*, 334 F.Supp.2d 781 (E.D.Pa.2004). In support of this request, the Government makes three arguments. First, it suggests that we do not fully appreciate the uniqueness of criminal forfeiture. Second, the Government insists that the procedures that we use to order forfeiture are inappropriate. Finally, the Government contends that we have incorrectly calculated the amount of money to which it is entitled.

### I. *Nature of Criminal Forfeiture*

The Government's most fundamental critique of our earlier opinion is that it fails to appreciate the significance of the "key difference between civil and criminal forfeitures." Gov't Br. at 6. As we recognized before, civil forfeiture proceedings operate *in rem* directly against property, and criminal forfeiture occurs through *in personam* procedures. From this distinction, the Government concludes that civil forfeiture and criminal forfeiture are "inherently" different remedies. *See id.* at 7. Although the Government recognizes that "direct tracing is still very much an essential element of most civil forfeiture actions," *id.* at 5, it insists that "[s]trict tracing between the property and the offense is another artifact of civil forfeiture

that does not carry over into criminal forfeiture," *id.* at 8.

■ The Government's obsessive emphasis on tracing misses the point. *See generally id.* at 5–19 (returning time and again to the issue of whether criminal forfeiture requires tracing). We mentioned tracing in our earlier opinion only to point out that *United States v. Ginsburg*, 773 F.2d 798 (7th Cir.1985) (*en banc*), was a case about tracing and, in part for that reason, was unpersuasive. *See Croce*, 334 F.Supp.2d at 791–92. A tracing case was unpersuasive to us because the case here has nothing to do with tracing. We did not refuse to enter forfeiture money judgments against the defendants because the Government had failed to trace the proceeds of their money laundering. Indeed, we explicitly recognized that 21 U.S.C. § 853(p) obviates any need for tracing in this case because that provision authorizes the forfeiture of substitute assets in lieu of the assets "involved in" or "traceable to" property involved in money laundering. *See Croce*, 334 F.Supp.2d at 784. Though we agree with the Government that it is entitled to forfeiture even if it cannot trace the laundered funds to any of the assets that the defendants now own, our agreement on that point does not require us to conclude that Congress authorized us to impose nonspecific and unlimited money judgments.

Apart from the tracing issue, we also believe that the Government places too much weight on the distinction between *in rem* civil forfeiture and *in personam* criminal forfeiture. The Government appears to believe that the very existence of this distinction implies that there are no mate-

---

**1.** We will grant a motion for reconsideration only if "the party seeking reconsideration shows at least one of the following grounds: (1) an intervening change in the controlling law; (2) the availability of new evidence that was not available when the court [rendered its decision]; or (3) the need to correct a clear error of law or fact or to prevent manifest injustice." *Max's Seafood Café v. Quinteros*, 176 F.3d 669, 677 (3d Cir.1999).

rial similarities between the two kinds of forfeiture, but we believe the differences are, in this context, inconsequential. The Government argues that our refusal to impose nonspecific and unlimited forfeiture money judgments in the criminal context rests on "older concepts derived from civil forfeiture law," which should not be relevant.[2] Gov't Br. at 9. In other words, the Government contends that we are treating criminal and civil forfeiture law similarly when we should recognize that they are fundamentally different.

The critical difference between civil forfeiture and criminal forfeiture is the identity of the defendant. In civil forfeiture, the Government proceeds against a thing (*rem*). In criminal forfeiture, it proceeds against a human being (*personam*). Any differences between civil forfeiture and criminal forfeiture arise from the practical and theoretical considerations implicated when the Government proceeds against an inanimate object or a person.

■ The Government correctly points out that civil forfeiture judgments can never be nonspecific and unlimited because particular items of property are the only defendants in those *in rem* proceedings. At best, the Government might have argued that, in this case, we should ignore the nonspecific and unlimited character of civil forfeiture judgments because there are practical and theoretical reasons for such limitations in the civil context (where the inanimate defendant has no capacity to own anything) that do not exist in the criminal context (where the human defendant has the capacity to own property).

The Government's argument, however, is far more expansive. It argues not that the character of a civil forfeiture judgment is irrelevant to this case, but that it *is* highly relevant. Because civil forfeiture judgments cannot be nonspecific and unlimited and because civil forfeiture is different from criminal forfeiture, the Government concludes that criminal forfeiture judgments may be nonspecific and unlimited. In place of such syllogisms, we had hoped that the Government would provide a practical or theoretical justification for distinguishing between the characters of criminal and civil forfeiture judgments, but, unfortunately, it has not offered any such justification.[3]

---

2. This point conveniently ignores our discussion of forfeiture of estate in criminal cases, the historical practice most analogous to contemporary criminal forfeiture. *See Croce,* 334 F.Supp.2d at 786–87. It also ignores the definitional and structural arguments upon which our opinion rests. *See id.* at 785, 794.

3. The Government does cite many cases for the proposition that "criminal forfeiture does not require proof of a link between the property and the offense." Gov't Br. at 9–10. Be that is it may, these cases focus on the tracing issue, which we have already explained is not relevant to whether we have the authority to impose nonspecific and unlimited forfeiture money judgments.

The Government also insists that "the courts appear to be unanimous in holding that a defendant may be ordered to pay a judgment equal to the value of the proceeds of a fraud or drug offense, or the value of the property laundered in a money laundering offense." *Id.* at 10. We have carefully reviewed the RICO and money laundering cases on which the Government principally relies, and they all (1) assume that the defendant has sufficient assets to discharge the forfeiture money judgment; (2) fail to discuss whether the court may impose a forfeiture money judgment in an amount greater than the defendant's net worth; and/or (3) are unpersuasive for the reasons explained in our earlier opinion.

Though many courts have authorized the imposition of forfeiture money judgments without inquiring into whether the defendant had an ability to pay them, neither the defendants nor the judges in those cases ever considered the prior question of whether that

In short, the Government believes that civil and criminal forfeiture are so different that Congress could not have intended for a criminal forfeiture judgment to share any characteristics with a civil forfeiture judgment. Although there are differences between criminal and civil forfeiture, the Government has not articulated any reason why a criminal forfeiture judgment may be nonspecific and unlimited.

Had Congress intended for criminal forfeiture to be "inherently" different from civil forfeiture, it would have chosen a different word to describe the penalty. For example, Congress might have used the word "fine" to denote a nonspecific and unlimited forfeiture money judgment from which a fine is indistinguishable. Because Congress chose to import "forfeiture" into the criminal code, we must conclude that it intended to embrace traditional understandings of civil forfeiture, except where practical or theoretical considerations require adjustment of those received understandings.

## II. *Forfeiture Procedure*

The Government also argues that Federal Rule of Criminal Procedure 32.2(e) would not make sense if we lack the authority to impose nonspecific and unlimited forfeiture money judgments because "to use the forfeiture laws to satisfy [any] money judgment ... the government *must* return to the court pursuant to Federal Rule 32.2(e) ... and ask the court to order the forfeiture of a specific item as a substitute asset." Gov't Br. at 23 (emphasis added). Because this description clearly over-simplifies the law,[4] the Government apparently invokes Rule 32.2(e) only as further evidence that courts routinely enter forfeiture money judgments. We have already explained, however, that the history of the Rule belies this conclusion. *See Croce*, 334 F.Supp.2d at 785 n. 12. Though the Government attempts to sidestep our analysis by reporting "inside information," *see* Gov't Br. at 19 n. 13,[5] we cannot rely on unsworn hearsay as a basis for reconsidering our opinion, and, in any event, that hearsay (for what it is worth) in no way undermines our analysis.

Still, in view of our holding, we shall explain further how we shall conduct criminal forfeiture proceedings. After a defendant is convicted, we shall—absent a waiver from the parties—instruct a jury to determine which of his property is subject to forfeiture. We shall also instruct the jury to determine the amount of money to which the Government is entitled to forfeiture, if the Government seeks forfeiture of substitute property. Once we have ascertained the amount of money to which the Government is entitled, we shall provide the Government with an opportunity to request the forfeiture of specific items of property (including specifically identified currency or accounts) as substitute assets in (partial) satisfaction of the forfeiture to which it is entitled. In the situation with which we are concerned—*i.e.*, when the amount of forfeiture to which the Government is entitled exceeds the defendant's

---

approach was proper. Thus, those decisions do not *hold* that imposing a forfeiture money judgment is proper.

We find unpersuasive the few cases explicitly upholding the propriety of the practice, as we explained in our earlier opinion.

4. Indeed, the Government concedes that, if we entered a forfeiture money judgment in its favor, it would *not* actually have to invoke Rule 32.2(e) because it could "enforce a money judgment under the Federal Debt Collection Procedures Act." *See* Gov't Br. at 23 n. 14.

5. The report merely informs us that the Government's view here is the same as what it conveyed to the Rules' Advisory Committee, but as to which that Committee took "no position".

net worth—our procedure will allow the Government to obtain forfeiture of all of a defendant's property, without subjecting him to a nonspecific and unlimited forfeiture money judgment that Congress has not authorized.

### III. *Amount of Forfeiture*

The Government's third ground for reconsideration is that we improperly calculated the amount of forfeiture to which it is entitled. Our opinion explained that, pursuant to 18 U.S.C. § 982, the Government was entitled to forfeiture of up to $2,171,043.45 from each defendant because they had been convicted of money laundering. *See Croce*, 334 F.Supp.2d at 795. The Government correctly notes, however, that our opinion did not consider that the defendants' convictions for mail fraud [6] and interstate transportation of money taken by fraud [7] might subject them to additional forfeiture pursuant to 18 U.S.C. § 981.

■■■■ Section 981 subjects to civil forfeiture "[a]ny property, real or personal, which constitutes or is derived from proceeds traceable to ... any offense constituting 'specified unlawful activity' (as defined in [18 U.S.C. § ] 1956(c)(7) ...)." [8]

6. 18 U.S.C. § 1341 (2004).

7. 18 U.S.C. § 2314 (2004).

8. Mail fraud and interstate transportation of money taken by fraud are both "specified unlawful activities." *See* 18 U.S.C. § 1956(c)(7)(A) (2004) (listing among "specified unlawful activities" any offense under 18 U.S.C. § 1961(1)); 18 U.S.C. § 1961(1)(B) (2004) (including acts indictable under 18 U.S.C. § 1341 or 18 U.S.C. § 2314 among types of "racketeering activity").

9. Though it did not, the Government might have argued that there is no specific statutory provision made for the type of mail fraud of which the defendants were convicted because their offenses did not "affect[ ] a financial institution" and § 982(a)(2)(A) only permits

*See* 18 U.S.C. § 981(a)(1)(C) (2004). Although § 981 deals with civil forfeiture, 28 U.S.C. § 2461(c) requires us to order the criminal forfeiture of any of a convict's property that would be subject to civil forfeiture, provided that "no specific statutory provision is made for criminal forfeiture upon conviction." Here, 18 U.S.C. § 982(a)(2)(A) is a specific statutory provision made for criminal forfeiture upon conviction of mail fraud, *see also Croce*, 334 F.Supp.2d at 784 n. 10, so § 2461(c) does not authorize us to order criminal forfeiture of mail fraud proceeds.[9] *Cf. United States v. Grass*, No. 02–146, 2002 U.S. Dist. LEXIS 26045 (M.D.Pa. Dec. 17, 2002) (Rambo, J.) (applying similar reasoning to conclude that Government is not entitled to criminal forfeiture of proceeds from wire fraud). We shall not, therefore, order forfeiture as a result of defendants' mail fraud convictions. On the other hand, § 2461(c) does require us to order criminal forfeiture of the defendants' proceeds from their interstate transportation of money taken by fraud because no other federal statute provides for criminal forfeiture of such proceeds.

Still, we cannot order the forfeiture of proceeds from interstate transportation of

criminal forfeiture when mail fraud affects financial institutions. We could not accept this argument even if the Government had made it because we read § 2461(c) as requiring criminal forfeiture only in those cases where Congress had not specifically considered whether, and to what extent, to authorize criminal forfeiture. In § 982(a)(2)(A), Congress clearly considered the circumstances in which it intended to include criminal forfeiture among a convict's punishments for mail fraud, and it concluded that criminal forfeiture was only appropriate when the mail fraud affected a financial institution (which Independence Blue Cross is not). It seems highly unlikely that, in passing the broad language of § 2461(c), Congress intended to silently remove the limitations on criminal forfeiture in mail fraud cases that it had carefully inserted into § 982(a)(2)(A).

money taken by fraud that occurred before April 25, 2000 because that is the date when proceeds of "specified unlawful activity" became subject to criminal forfeiture. *See* Civil Asset Forfeiture Reform Act of 2000, Pub.L. No. 106–185, 114 Stat. 202. Of the five counts of conviction for interstate transportation of money taken by fraud, three counts (5, 6, and 7) took place before April 25, 2000, so the Government is not entitled to any forfeiture as a result of those convictions. The crimes that form the basis of counts 8 and 9, however, occurred after April 25, 2000, so the Government is entitled to forfeiture of the proceeds from those crimes, or $61,904.70. When that amount is added to the $2,171,043.45 in forfeiture to which the defendants' money laundering convictions entitled the Government, it becomes clear that our original opinion should have recognized that the Government was entitled to forfeiture of up to $2,232,948.15 from each defendant.

## IV. *Conclusion*

We remain convinced of the fundamental soundness of our original opinion. Although the Government has cited many cases that implicitly, or even explicitly, approve of the entry of forfeiture money judgments, few of those cases have considered the issue closely. For the reasons explained in our first opinion, and amplified herein, we do not find those few cases persuasive.

Despite our continued reticence to enter forfeiture money judgments against the defendants here, the Government has shown that it is entitled to forfeiture of up to $2,232,948.15 from each defendant, $61,904.70 more than we initially recognized. We shall therefore grant its motion for reconsideration only to the extent that we must reconsider the amount of forfeiture to which it is entitled and shall direct it to file motions for forfeiture orders before the end of the year.

An appropriate Order follows.

## *ORDER*

AND NOW, this 19th day of November, 2004, upon consideration of the Government's motion for reconsideration (docket entry # 205), and in accordance with the accompanying Memorandum, it is hereby ORDERED that:

1. The Government's motion for reconsideration is GRANTED IN PART;

2. By December 30, 2004, the Government shall FILE motions for forfeiture orders against Croce, Rose, and Quattrone; and

3. By January 14, 2005, defendants shall FILE responses to the Government's motions for forfeiture orders.