UNITED STATES OF AMERICA

v.

Vincent J. CROCE, et al.

Nos. CR. 02–819–01, CR. 02–819–02, CR. 02–819–03.

United States District Court, E.D. Pennsylvania.

Feb. 2, 2005.

Louis D. Lappen, U.S. Attorney's Office, Philadelphia, PA, for Plaintiff.

Brian J. Rose, pro se, Huntingdon Valley, PA.

Joseph A. Quattrone, Jr., pro se.

W. Scott Magargee, Cozen & O'Connor, Gilbert J. Scutti, Dickstein and Scutti, Jeffrey M. Miller, Nasuti & Miller, Rossman D. Thompson, Defender Association of Philadelphia, Jeremy H. Gonzalez Ibrahim, Law Office of Jeremy H. Gonzalez Ibrahim, Philadelphia, PA, for Defendants.

## MEMORANDUM

DALZELL, District Judge.

■ In response to three Government motions, we recently held that we lack the authority to impose nonspecific and unlimited forfeiture money judgments. *See United States v. Croce*, 334 F.Supp.2d 781 (E.D.Pa.2004) (*"Croce I"*). The Government sought reconsideration of that basic holding, but we adhered to it in *United States v. Croce*, 345 F.Supp.2d 492 (E.D.Pa.2004) (*"Croce II"*). Now, the Government has again asked us to reconsider[1] our decisions in *Croce I* and *Croce II* because it believes that we lacked jurisdiction to render those decisions.

### Factual Background

On April 2, 2003, Vincent J. Croce pled guilty to the charges against him, and soon thereafter the Government requested that we enter a proposed "Judgment and Preliminary Order of Forfeiture" against him. Because Croce did not object, we signed the Government's proposed form of order on June 6, 2003. Part of the order explained that "a money judgment in the amount of $5,138,935.66 shall be entered against defendant [Croce] as the amount of property which constitutes or is derived from proceeds traceable to any offense constituting specified unlawful activity." *See* Order of June 6, 2003, at ¶ 3. The order also recognized that we would "retain jurisdiction to enforce [it], and to amend it as necessary, pursuant to Fed. R.Crim.P. 32.2(e)." *Id.* at ¶ 12. On November 5, 2003, we signed a standard "Judgment in a Criminal Case" against Croce, but that judgment does not require Croce to forfeit anything. *See* Judgment of November 5, 2003, at 5.

Following a lengthy trial, on October 10, 2003, a jury convicted Brian J. Rose and Joseph A. Quattrone, Jr. of the charges against them. In anticipation of sentencing, the Government submitted proposed "Forfeiture Money Judgment[s]" to be entered against Rose and Quattrone. When neither Rose nor Quattrone objected to them, we signed the proposed judgments on January 16, 2004. Each judgment states that a "money judgment in the amount of $2,611,149.41 is hereby entered against the defendant" and also explains that we "retain jurisdiction to enforce [them], and to amend [them] as necessary, pursuant to Fed.R.Crim.P. 32.2(e)." Orders of Jan. 16, 2004, ¶¶ 3, 7.

In addition to the Government's proposed "Forfeiture Money Judgment[s]," we also signed the standard "Judgment[s] in a Criminal Case" against Rose and Quattrone on January 20, 2004. Each judgment required a defendant to forfeit $2,611,149.41 to the United States. *See* Judgments of Jan. 20, 2004, at 5. On January 26, 2004, Rose and Quattrone filed timely notices of appeal, and both appeals are still pending before the Court of Appeals.

---

1. We will grant a motion for reconsideration only if "the party seeking reconsideration shows at least one of the following grounds: (1) an intervening change in the controlling law; (2) the availability of new evidence that was not available when the court [rendered its decision]; or (3) the need to correct a clear error of law or fact or to prevent manifest injustice." *Max's Seafood Café v. Quinteros,* 176 F.3d 669, 677 (3d Cir.1999).

A few months later, the Government filed three motions that attempted to clarify the preliminary forfeiture order that we had entered against Croce and the forfeiture money judgments that we had entered against Rose and Quattrone. First, recognizing that we had only entered a "Preliminary Order of Forfeiture" against Croce, the Government asked us to enter a proposed "Judgment and Final Order of Forfeiture." Having already obtained final "Forfeiture Money Judgment[s]" against Rose and Quattrone, however, the Government's other two motions sought to substitute "$100,000 U.S. currency" in partial satisfaction of the $2,611,149.41 forfeiture money judgment against Rose and "$280,000 U.S. currency" in partial satisfaction of the $2,611,149.41 forfeiture money judgment against Quattrone.

After considering these three motions (and the Government's supplemental briefing) at length, we denied them without prejudice because we rejected the premise on which they were based, to wit, that we have the authority to impose nonspecific and unlimited forfeiture money judgments. *See generally Croce I,* 334 F.Supp.2d 781 (E.D.Pa.2004) (explaining why 18 U.S.C. § 982 does not authorize forfeiture money judgments); *see also* Order of September 8, 2004, ¶¶ 4–6 (denying the Government's motions for the reasons described in *Croce I* ). In addition to denying the Government's motions, we simultaneously vacated the Judgment and Preliminary Order of Forfeiture against Croce and the Forfeiture Money Judgments against Rose and Quattrone. *See id.* at ¶¶ 1–3. We also amended the Judgments of January 20, 2004 against Rose and Quattrone to relieve them of any obligation to pay nonspecific forfeiture money judgments. *See id.* at ¶¶ 7–8. Despite this result, we recognized that "the Government remain[ed] entitled to the forfeiture of up to $ 2,171,043.45

from each defendant" and allowed it to specify the property of which it planned to seek forfeiture to satisfy that entitlement. *See Croce I,* 334 F.Supp.2d at 795.

The Government sought reconsideration of *Croce I* on two principal grounds. First, it suggested that we had failed to recognize the full extent of our authority to impose forfeiture money judgments. Second, the Government argued that we had not considered 18 U.S.C. § 981 when we calculated the maximum value of property of which it might seek forfeiture. While we rejected the first ground for reconsideration, we recognized that § 981 authorized the forfeiture of an additional $61,904.70 from Croce, Rose, and Quattrone. *See Croce II,* 345 F.Supp.2d at 497. Thus, we concluded that "the Government [is] entitled to forfeiture of up to $ 2,232,948.15 from each defendant." *Id.*

Still unsatisfied, the Government has filed a second motion for reconsideration, and that motion is now before us.[2]

*Legal Analysis*

■ The Government's second motion for reconsideration argues that we were without jurisdiction to enter our Order of September 8, 2004 (our "Order"), which we announced contemporaneously with *Croce I,* because it "chang[ed] the defendants' sentences several months after the time of sentencing." Gov't Mot. at 7. Implicitly deploying the canon *expressio unius est exclusio alterius,* the Government assumes that only Federal Rules of Criminal Procedure 32.2, 35, and 36 permit a district court to correct a sentence, and thus it reasons that, because none of those Rules authorized our Order, we could not have had jurisdiction to correct the defendants' sentences.

To begin, we agree that neither Rule 32.2 nor Rule 35 nor Rule 36 authorized us to correct the defendants' sentences here.

---

**2.** Despite our invitation, defendants have not responded to the Government's motion.

Rule 32.2(e)(1) authorizes the district court "at any time [to] amend an existing order of forfeiture to include property that: (A) is subject to forfeiture under an existing order of forfeiture but was located and identified after that order was entered; or (B) is substitute property that qualifies for forfeiture under an applicable statute." Because our Order vacated three forfeiture orders and did not amend them "to include" other property, Rule 32.2 did not authorize it. Similarly, Rule 35 did not authorize us to enter our Order because that rule only permits a court (with inapplicable exceptions [3]) to correct a sentence "[w]ithin 7 days after sentencing." Rule 36, which permits us "at any time [to] correct a clerical error in a judgment, order, or other part of the record," is also inapposite because our Order did more than merely rectify "clerical error." While these Rules did not authorize our Order, we nevertheless would have had jurisdiction to enter it if some other Rule or statute so authorized it or if we retained the inherent power to amend the forfeiture money judgments.

■ We begin with the possibility of inherent power. Courts have long recognized "inherent equitable powers of courts of law over their own process, to prevent abuses, oppression, and injustices." *Seattle Times Co. v. Rhinehart,* 467 U.S. 20, 35, 104 S.Ct. 2199, 2209, 81 L.Ed.2d 17 (1984) (internal quotations omitted). It seems beyond debate that those inherent powers must include a judge's power to correct his own mistakes in at least some circumstances.

■ Still, "[p]rinciples of deference counsel restraint in resorting to inherent power, and require its use to be a reason-

able response to the problems and needs that provoke it." *Degen v. United States,* 517 U.S. 820, 823–24, 116 S.Ct. 1777, 1781, 135 L.Ed.2d 102 (1996) (citation omitted). In exploring the limits of our inherent power to correct a sentence, we recognize that Congress provided the courts of appeals with "jurisdiction of appeals from all *final* decisions of the district courts." 28 U.S.C. § 1291 (2004) (emphasis added). Moreover, the Supreme Court has cautioned that "a federal district court and a federal court of appeals should not attempt to assert jurisdiction over a case simultaneously. The filing of a notice of appeal is an event of jurisdictional significance—it confers jurisdiction on the court of appeals and divests the district court of its control over those aspects of the case involved in the appeal." *Griggs v. Provident Consumer Discount Co.,* 459 U.S. 56, 58, 103 S.Ct. 400, 402, 74 L.Ed.2d 225 (1982). Although the Government does not cast its argument in policy-based terms, § 1291 and *Griggs* suggest that, whatever the full extent of a district court's inherent power to correct illegal sentences, that power certainly cannot extend to cases where at least one of the parties has appealed from a final decision. On the other hand, neither the need for orderly disposition of appeals nor any other policy that we can identify (or that the Government has identified) suggests that a district court lacks the inherent power to correct an illegal sentence that is neither final nor the subject of a pending appeal.[4]

This case involves both situations. Our Order attempted to correct the sentences imposed on Rose and Quattrone even though we had already entered final Forfeiture Money Judgments against them[5]

---

3. *See* Fed.R.Crim.P. 35(b).

4. We express no opinion on the extent of a district court's inherent power to correct a sentence that has become final without ever having been appealed.

5. The Forfeiture Money Judgments did not explicitly claim to be "final," but we intended them to be "final" within the meaning of Rule 32.2 and 28 U.S.C. § 1291 when we entered them.

and even though they had already filed notices of appeal. Given those facts, we did not have the inherent power to correct their sentences. With respect to Croce, however, we had entered only a "Judgment and Preliminary Order of Forfeiture," [6] and he never appealed any of our decisions to the Court of Appeals. Because the forfeiture order was not final and he has not filed an appeal, we had the inherent power to correct Croce's sentence.

◼ Apart from our inherent power to correct a sentence, certain statutes may authorize us to do so. For example, the Government ignores the possibility that we have the power to grant a writ of habeas corpus *sua sponte* to a defendant to correct an illegal sentence. *See* 28 U.S.C. § 2241 (authorizing district courts to grant writs of habeas corpus). We need not explore this possibility fully at this time because we hold that we had the inherent power to correct at least the portions of Croce's sentence dealing with forfeiture because they were not yet final. Even if we have the discretion to grant a writ of habeas corpus to either Rose or Quattrone while their appeals are pending, we would not exercise that discretion because we would not want to interfere with the Court

of Appeals's work. Moreover, Rose and Quattrone may seek habeas relief after their appeals are resolved. We mention the possibility of habeas relief only to underscore that, as deeply as the Government may disagree with the conclusions in *Croce I* and *Croce II,* the federal courts are not without the tools to root out injustice.

To sum up, we had the inherent power to correct Croce's sentence, but that power did not extend to our attempt to correct the sentences of Rose and Quattrone. Moreover, we decline to grant habeas relief to Rose or Quattrone before the Court of Appeals resolves their appeals. We shall therefore grant the Government's second motion for reconsideration to the extent that it asks us to vacate the portions of our Order dealing with Rose and Quattrone.[7] In all other respects, *Croce I* and *Croce II* remain binding.

An Order embodying these conclusions follows.

## ORDER

AND NOW, this 2nd day of February, 2005, upon consideration of the Government's second motion for reconsideration (docket entry # 210), and in accordance

---

6. Rule 32.2 distinguishes between preliminary and final orders of forfeiture, but it fails to explain clearly when a preliminary order becomes final. Although Rule 32.2(b)(3) explains that the preliminary order of forfeiture becomes "final as to the defendant" at sentencing, we do not understand it to become "final" within the meaning of 28 U.S.C. § 1291 because the order is not yet binding "as to" all others. A preliminary order of forfeiture does not become fully binding until after an "ancillary proceeding ends" or "the court finds that the defendant ... had an interest in the property that is forfeitable under the applicable statute." *See* Rule 32.2(c)(2). Thus, we hold that Rule 32.2(c)(2) governs when a preliminary order of forfeiture becomes "final" under § 1291. Since we only entered a "preliminary" order

against Croce, never made the requisite findings under Rule 32.2(c)(2), and never intended for that order to be final, Croce was never subject to a "final" order of forfeiture within the meaning of Rule 32.2 and/or § 1291. In this regard, it is also significant that the standard "Judgment in a Criminal Case" of November 5, 2003 does not impose any forfeiture obligation against Croce.

7. By vacating those paragraphs, the "Forfeiture Money Judgment[s]" of January 16, 2004 against Rose and Quattrone will have whatever effect they had before we announced *Croce I.* Similarly, page 5 of the "Judgment[s] in Criminal Case" against Rose and Quattrone will once again order Rose and Quattrone to forfeit "$2,611,149.41."

with the accompanying Memorandum, it is hereby ORDERED that:

1. The Government's second motion for reconsideration is GRANTED IN PART;

2. Paragraphs 2, 3, 7, and 8 of our Order of September 8, 2004 are VACATED;

3. In accordance with the procedure described in *Croce II*, the Government shall FILE a motion for forfeiture order against Croce by February 16, 2005; and

4. By March 2, 2005, Croce shall RESPOND to the Government's motions.